UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert ALLEN (91–5205) and Billy
Webb (91–5206), Defendants–
Appellants.

Nos. 91–5205, 91–5206.

United States Court of Appeals,
Sixth Circuit.

Argued Nov. 14, 1991.

Decided Jan. 24, 1992.

Michael Winck, Asst. U.S. Atty., Knoxville, Tenn. (argued and briefed), Jerry G. Cunningham, U.S. Atty., Office of U.S. Atty., Chattanooga, Tenn., for U.S.

Thomas C. Jessee, Jessee & Jessee, Johnson City, Tenn. (argued and briefed), for Robert Allen.

Tim S. Moore, Newport, Tenn. (argued), Gordon Ball, Knoxville, Tenn. (briefed), for Billy Webb.

Before MILBURN and GUY, Circuit Judges, and GRAHAM, District Judge.[*]

MILBURN, Circuit Judge.

In these consolidated cases, defendants Billy Webb and Robert Wayne Allen appeal their convictions and sentences after being convicted by a jury of conspiracy to manufacture marijuana in violation of 21 U.S.C. § 846,[1] manufacturing marijuana in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B),[2] and aiding and abetting each other in violation of 18 U.S.C. § 2.[3] For the reasons that follow, we affirm the convictions and sentences of both defendants.

On appeal defendant Billy Webb raises four issues: (1) whether his due process

---

[*] The Honorable James L. Graham, United States District Judge for the Southern District of Ohio, sitting by designation.

1. 21 U.S.C. § 846 provides:

Any person who attempts or conspires to commit any offense defined in this subchapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy.

2. 21 U.S.C. § 841(a)(1) provides in relevant part:

(a) Except as authorized by this subchapter, it shall be unlawful for any person knowingly or intentionally—
(1) to manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance....
(b)(1)(B) In the case of a violation of subsection (a) of this section involving—

. . . .
(vii) 100 kilograms or more of a mixture or substance containing a detectable amount of marijuana, or 100 or more marijuana plants regardless of weight
. . . .
such person shall be sentenced to a term of imprisonment which may not be less than 5 years and not more than 40 years....

3. 18 U.S.C. § 2 provides:

Principals
(a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.
(b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

and equal protection rights were violated by the imposition of the five-year minimum sentence provided in 21 U.S.C. § 841(b)(1)(B) and whether there is a rational basis for the statutory and guideline marijuana sentencing provisions which result in the minimum five-year sentence; (2) whether his due process rights were violated by Tennessee state agents who conducted the investigation but who referred the case to federal prosecutors in order to impose a significantly heavier sentence of imprisonment on Webb and in order to avoid suppression of evidence based on Tennessee law; (3) whether state or federal law controls search and seizure issues and whether the activity of the Tennessee state agents violated Webb's rights under Article I, Section VII of the Tennessee Constitution relating to unreasonable searches and seizures; and (4) whether the district court erred in finding that Webb should be sentenced on the basis of more than 100 marijuana plants where Tennessee state agents destroyed the plants and there was a conflict in the government's proof regarding the number of plants.

The issues raised by defendant Allen are as follows: (1) whether the district court committed error in adopting the report of the magistrate judge which refused to suppress evidence obtained from the surveillance and seizures carried out in this matter; (2) whether the district court erred in finding that the evidence was sufficient to convict defendant Allen of conspiracy and the substantive offenses when the evidence is insufficient as a matter of law for the jury to convict on the charges; (3) whether the district court erred in finding that the evidence supported the government's position that there were 122 plants seized thereby requiring that the defendants be sentenced under the mandatory provisions of the statute and, further, whether the constitutional provisions of due process and equal protection were violated by the application of the five-year minimum sentence.

### I.

#### A. Facts

The indictment in this case alleged that Billy Webb and Robert Allen, defendants in this appeal, along with co-defendants Cleveland C. Gardner and Vinyard Ailey, conspired to manufacture marijuana and did manufacture marijuana in Jefferson County, Tennessee. Ailey, Webb and Allen were tried together. Defendant Gardner pleaded guilty and testified at the trial on behalf of the government. Defendants Webb and Allen were found guilty, and Ailey was acquitted.

The government's evidence was the testimony of co-defendant Gardner and Tennessee agents who investigated the case as well as exhibits supporting their testimony. Gardner testified at trial that while employed as a truck driver with BASF in Morristown, Tennessee, he worked with defendants Webb and Allen who also drove trucks for BASF. Gardner and co-defendant Ailey were neighbors living approximately a quarter of a mile apart.

According to Gardner's testimony, sometime during the early spring of 1989, Gardner and defendants Webb and Allen agreed to grow marijuana together. Defendant Webb suggested that they cultivate the marijuana on Gardner's property, but Gardner refused because that area would be too visible. When Gardner and defendants Webb and Allen were driving by a wooded section located on property owned by co-defendant Ailey, defendant Webb suggested that the wooded area would be a good place to grow marijuana. At defendant Webb's request, Gardner contacted co-defendant Ailey, advised that they wanted permission to grow marijuana on Ailey's property, and suggested a five-way split with Ailey for allowing them to use his land. The five-way split was to have included defendants Webb, Allen, Ailey, Gardner, and a fifth person named Greg who Webb stated would be entitled to a split of the proceeds. According to Gardner's testimony, Ailey advised Gardner that the suggestion was fine with him, but that he did not want to know any of the details. Defendant Allen notes that only Gardner actually requested permission from Ailey.

According to Gardner, after obtaining permission from Ailey, defendants Webb,

Gardner, and Allen cleared an open area in a wooded section on the property owned by Ailey. It took approximately two days for the defendants to prepare the area for growing marijuana by using a Kubota tractor with a tiller on it which was rented from Morristown Rental Company. Records from the Morristown Rental Company reflected that on March 26, 1989, a 25–horsepower Kubota tractor was rented by Wilma G. Webb, defendant Webb's wife, and was "picked up" by defendant Allen using a blue Jeep. The tractor was returned four days later. Defendant Allen testified that he "picked up" the tractor at Wilma Webb's request because defendant Webb was not at home. Defendant Allen also testified that he allowed co-defendant Gardner to use the tractor for a time because Gardner had told him he needed to move some gravel.

Gardner testified that after the ground in the wooded area was tilled, he and defendants Webb and Allen planted approximately 140 marijuana plants which defendant Webb had provided. Defendant Webb explained to Gardner that they were all believed to be female plants, and the plants were two to three inches in height. Gardner testified that around the first of June, a heavy rain washed away a number of the plants. After the heavy rain, Gardner counted the plants remaining and determined the number to be 82.

According to Gardner, on one occasion he visited the marijuana patch alone, but on all other occasions he traveled to the marijuana patch with defendants Webb and Allen. The defendants would meet at the White Pine Truck Stop near Morristown, Tennessee, and Interstate 81. From there they would travel to the marijuana patch. After tilling and planting the marijuana, Gardner along with defendants Webb and Allen returned to the marijuana patch on three occasions to fertilize and clean weeds from the plants. The fertilizer was paid for by defendant Webb and acquired by Gardner and Allen who transported it to the patch in defendant Allen's truck. The leftover fertilizer and the hoes used to chop the weeds were left in the marijuana patch.

The testimony of law enforcement agents corroborated some of co-defendant Gardner's testimony. In early July 1989, Agent David Morris of the Tennessee Alcohol & Beverage Commission located the marijuana patch being cultivated on Ailey's property in Jefferson County, Tennessee. He did not attempt to obtain permission prior to entering the property, and the patch was not visible from the road. On July 23, 1989, law enforcement agents conducted surveillance of the marijuana patch. At approximately 6:40 a.m. that day, Special Agent Mack Smith with the Tennessee Bureau of Investigation observed Gardner and defendants Webb and Allen entering the marijuana patch.

When Gardner and the defendants entered the patch, they moved toward the center area and began looking at the marijuana plants. Shortly thereafter, defendant Webb walked to the perimeter of the marijuana patch, stopped and looked into the direction of the woods and proceeded along the perimeter of the marijuana patch, periodically stopping every ten or twelve feet to look toward the ground and out into the woods until he completely walked around the perimeter. After circling the patch, defendant Webb rejoined Gardner and defendant Allen in the center of the marijuana patch, and all three defendants began chopping weeds from around the marijuana plants.

Special Agent Smith observed that at approximately 8:15 a.m., defendants stopped working, and Gardner took the hoes which he and the two defendants had been using to cultivate the marijuana and placed them along the edge of the marijuana patch near the woods. On that day, Special Agent Smith had a camera with which he was not very familiar, and the pictures he took that day were underexposed and the images were not visible. However, Special Agent Smith was able to view Gardner and defendants Webb and Allen through a telephoto lens and observed defendant Webb from as close as 20 feet away when he was walking the perimeter of the patch. Thereafter, Special Agent Smith was able to identify all three individuals in court. On July 30, 1989,

Special Agent Smith returned to the marijuana patch and observed that the soil around each of the marijuana plants had been weeded and well cultivated.

Law enforcement agents again conducted surveillance on August 6, 1989. At approximately 10:16 a.m. on that day, Agent Smith heard a vehicle enter the area near the marijuana patch and shortly thereafter observed Gardner and defendants Webb and Allen entering the patch. Shortly after defendants arrived, it began to rain, and defendants ran from the field in the direction from which they had come. Co-defendant Gardner testified that on one occasion when he and defendants Webb and Allen were at the marijuana patch, they had been caught in a heavy rain.

On August 6, approximately 25 minutes after defendants had left the marijuana patch, the rain stopped, and co-defendant Gardner and defendants Webb and Allen were observed reentering the marijuana patch. Special Agent Smith again observed defendant Webb walk to the edge of the marijuana patch near the woods and look out into the woods while walking around the perimeter of the patch. Defendant Webb again came within 20 to 25 feet of Agent Smith. Defendant Webb was observed picking up the garden hoes where co-defendant Gardner had left them on July 23, 1989, and carrying them to the end of the marijuana patch. Agent Smith testified that he observed Gardner and defendants Webb and Allen cultivating and fertilizing the marijuana until approximately 11:45 a.m. when the defendants left. During this surveillance, Agent Smith took a number of photographs of defendants Gardner, Webb, and Allen in the marijuana patch talking to one another and cultivating the marijuana plants.

On August 18, 1989, the marijuana plants located in the marijuana patch on co-defendant Ailey's property were destroyed. Defendants were not given an opportunity to count the plants before they were destroyed. The plants were cut rather than pulled from the ground. Agent French, with the Tennessee Alcoholic Beverage Commission, testified that he walked through the patch by himself and counted 122 marijuana plants. Agent French also testified that he counted the marijuana plants a second time and determined again that there were 122.

Additionally, Agent David Morris, with the Tennessee Alcoholic Beverage Commission, participated in the destruction of the marijuana plants on August 18, 1989. Agent Morris testified that he also counted 122 marijuana plants from the marijuana patch in Jefferson County. Also, Agent Morris testified that each of the 122 plants were separate marijuana plants, and that none of the plants appeared to be close enough to share the same root system. Agent Morris submitted a sample of marijuana plants to the TBI lab for testing, and the plants tested positive for marijuana. No warrants were obtained by the agents for their activities on the Ailey property.

Defendant Allen contested the government's proof with his own testimony. He testified that Gardner borrowed approximately $1500 from him and Webb in the early summer of 1989 in order to buy a truck. When defendant Allen later asked defendant Gardner about the $1500, Gardner advised defendant Allen that he was growing a marijuana patch and would repay his loan with defendant Allen from the proceeds of that marijuana. Defendant Allen testified that he did not believe Gardner was telling him the truth, and that he and defendant Webb went with Gardner to the marijuana patch in order for Gardner to show them how he was going to pay back their $1500. Defendant Allen testified that he and Webb returned to the patch after Gardner told them that they would have to help him, and that he went back to the marijuana patch only in order to get his money back. Defendant Allen testified that he only visited the marijuana patch on those two occasions.

**B. Procedural History**

On December 19, 1989, a federal grand jury returned a two-count indictment charging defendants Allen and Webb along with co-defendants Gardner and Ailey in each count. Count I charged all four de-

fendants with conspiring to manufacture marijuana during the spring and summer of 1989 up to and including August 18, 1989, in violation of 21 U.S.C. § 846. Count II charged all four defendants with unlawfully manufacturing marijuana during the same time period in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) and 18 U.S.C. § 2. Defendant Webb's initial appearance was on May 11, 1990.

On September 13, 1990, a suppression hearing was held on defendants' motion to suppress the warrantless search of co-defendant Ailey's property from which the marijuana plants were seized. On September 20, 1990, the magistrate judge filed a report and recommendation recommending that the defendants' motions to suppress be denied. Defendants objected to the magistrate judge's report and recommendation, but the district court adopted the magistrate judge's report and recommendation and denied defendants' motions to suppress.

As earlier stated, co-defendant Gardner pled guilty to the conspiracy charge and testified in behalf of the government. A jury trial commenced on October 1, 1990, and concluded on October 2, 1990. The jury found defendants Webb and Allen guilty of both counts I and II of the indictment and found Ailey not guilty of both counts. On January 31, 1991, defendants Allen and Webb were sentenced to a sixty (60) month term of imprisonment on both counts I and II to run concurrent to each other followed by a four (4) year term of supervised release and received a $100 assessment. Defendants' timely appeals followed.

## II.

A. The Appropriateness of Prosecution of this Case in Federal Court

■ Defendant Webb argues that his due process and equal protection rights were violated by the unguided referral by the state law enforcement officers of this case to the U.S. Attorney's office for prosecution. He claims that due to this referral his sentence was greatly increased. Defendant Webb notes that the investigation and eradication of the marijuana plants solely involved Tennessee agents and argues that the case was merely referred to the federal prosecutors due to the stiffer sentences provided for by federal law. Defendant Webb argues that he has been treated unfairly compared to Tennessee defendants in similar prosecutions in state courts.

The government points out that defendant presented the issues of due process and equal protection to the district court in a motion for a downward departure of his sentence. These issues were also raised in defendants' Motion to Declare Sentencing Reform Act and Sentencing Guidelines Unconstitutional. As defendant Webb has raised issues of law, we will review them de novo. *Whitney v. Brown*, 882 F.2d 1068, 1071 (6th Cir.1989); *Loudermill v. Cleveland Bd. of Educ.*, 844 F.2d 304, 308 (6th Cir.), *cert. denied*, 488 U.S. 946, 109 S.Ct. 377, 102 L.Ed.2d 365 (1988).

Defendant relies on *United States v. Williams*, 746 F.Supp. 1076 (D.Utah 1990). However, *Williams* has been rejected by the Tenth Circuit in *United States v. Andersen*, 940 F.2d 593 (10th Cir.1991). In *Williams* the defendant was arrested through the efforts of a narcotics strike force involving local, state and federal agencies. *Williams*, 746 F.Supp. at 1078. The strike force had no express policies for referral of cases for federal prosecution. *Id.* at 1079. The reasoning behind the *Williams* decision, and the reasoning that defendants suggest we adopt in this case, is that because the decision of the strike force to refer a case for federal prosecution greatly affected the sentence of defendant and because the strike force had no express policy governing which cases would be referred, defendant's due process rights were violated by the absence of such a policy. *Id.* at 1080.

■ *Andersen* flatly rejected the district court's logic in *Williams* and involved the same strike force that was involved in *Williams*. *Andersen*, 940 F.2d at 595. The Tenth Circuit emphasized the role of the prosecutor and the prosecutor's broad discretion in the decision of whether or not

charges will be brought against a particular defendant.

Although we agree that the Strike Force would be well served by written policies addressing referral decisions, such guidelines are not constitutionally mandated. Defendant's argument misconceives the role Strike Force officers play in the charging decisions made by state and federal prosecutors. Undoubtedly Strike Force officers have some influence on charging decisions. They make the initial decision whether to refer a case to federal or state prosecutors. They also may confer with prosecutors as charging decisions are made. The ultimate decision whether to charge a defendant, and what charges to file, however, rests only with state and federal prosecutors.

*Id.* at 597. Prosecutors are given great discretion in determining which cases will be prosecuted: "[So] long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision of whether or not to prosecute and what charge to file ... generally rests entirely in his discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668–69, 54 L.Ed.2d 604 (1978) (footnote omitted). The decision, however, cannot be based on a defendant's race, sex, religion, or exercise of a statutory or constitutional right. *Andersen*, 940 F.2d at 596. The prosecutor may properly base his decision on the penalties available upon conviction when determining what offense will be charged against a defendant. *United States v. Batchelder*, 442 U.S. 114, 125, 99 S.Ct. 2198, 2204–05, 60 L.Ed.2d 755 (1979).

■ We agree with the Tenth Circuit that due process does not mandate that referrals be controlled through policy as long as prosecutors are not acting as rubber stamps and exert their own discretion

as to whether or not to prosecute. *Id.* at 597. There is no evidence of "rubber stamping" in this case, and defendant Webb has failed to demonstrate that his due process or equal protection rights have been violated.

**B. Choice of Law in Search and Seizure Issue**

■ Defendants argue that the district court committed error in adopting the magistrate judge's report and recommendation denying defendant's motion to suppress the evidence. Defendants' theory is that state law rather than federal law should have been applied to the search and seizure issue in this case due to state involvement in the investigation. We review this question of law de novo. *Whitney*, 882 F.2d at 1071; *Loudermill*, 844 F.2d at 308.

Defendant Allen stated this question as "whether information secured by officers of ... Tennessee entirely, without federal involvement, should be admissible in a federal prosecution notwithstanding violations of state law." Defendant Allen's Brief at 7. It is the defendants' position that in the interest of comity the federal court should have referred to Tennessee's more stringent exclusionary rule.[4] Defendants contend that this investigation and eradication of the marijuana stems solely from the activities of state agents.

The government counters defendants' argument by arguing that both federal and state authorities were involved from the inception of the investigation in a cooperative effort. To support its argument, the government cites to defendant Webb's motion for production of state police reports. We find nothing in that motion to indicate that the investigation was a combined state and federal effort. However, Agent Ball testified at the suppression hearing that he

---

4. Defendant Allen cites *United States v. Henderson*, 721 F.2d 662 (9th Cir.1983), *cert. denied*, 467 U.S. 1218, 104 S.Ct. 2665, 81 L.Ed.2d 370 (1984), for his position. However, *Henderson* does not support his contention: "It is clear from our precedents that evidence obtained by federal officials, or by federal officials acting in concert with state officers, in violation of state law but in compliance with federal law

is admissible. Whether information secured by state officers entirely without federal involvement should be admissible notwithstanding violations of state law is a question that remains undecided." *Id.* at 664 (citations omitted). The Ninth Circuit has subsequently decided the issue and has held that federal law should apply. *United States v. Chavez-Vernaza*, 844 F.2d 1368, 1373 (9th Cir.1987).

had discussed with a D.E.A. agent and the U.S. Attorney's Office investigations of marijuana patches prior to July 28, 1989. From the record it is unclear whether Agent Ball discussed this particular marijuana field or was discussing investigations in general. The government's counsel stated during the sentencing hearing that federal agents were involved in the investigation of this case. Due to the inconclusive nature of the record and the statement by the magistrate judge that "[a]ll of the surveillances and the seizure were carried out by State of Tennessee law enforcement officers," we shall assume for purposes of analysis that no federal officers or agents were involved in this investigation, at least not directly, until after the seizure of marijuana had occurred.

The defendants set forth two basic arguments. The first is that in the interest of comity, the federal court should defer to the state's more stringent exclusionary rule. Defendants cite several cases, none of which are on point.

Defendant Webb cites *United States v. Di Re,* 332 U.S. 581, 68 S.Ct. 222, 92 L.Ed. 210 (1948), for the proposition that unless a federal statute declares otherwise, state officers shall follow state law when they investigate federal crimes. However, *Di Re* addressed the issue of what law would apply in evaluating whether or not an arrest of the defendant by a state law enforcement officer would be a lawful arrest. Furthermore, the Supreme Court did not address the issue of whether or not federal law as opposed to state law would apply when the issue was the propriety of a search conducted by state law enforcement officers resulting in the seizure of evidence of a federal crime.

This court has held that the fact that state law "may now require greater protection against searches and seizures than the fourteenth amendment is of no avail to a defendant in federal court, under prosecution of a federal crime." *United States v. Loggins,* 777 F.2d 336, 338 (6th Cir.1985); *see United States v. Combs,* 672 F.2d 574, 578 (6th Cir.), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982) ("states are not free to impose on Federal courts requirements more strict than those of Federal laws or Constitution"). Those cases rely on *Elkins v. United States,* 364 U.S. 206, 80 S.Ct. 1437, 4 L.Ed.2d 1669 (1960).

Defendant Webb argues that *Elkins* does not "undercut" their argument because in *Elkins* the court recognized that the state policy and state law should not be frustrated. While defendant may be correct that *Elkins* does not directly dispose of this issue, *Loggins* does directly address this issue and clearly settles the matter. To the same effect, see *United States v. One Parcel of Real Property,* 873 F.2d 7, 8 (1st Cir.), *cert. denied,* 493 U.S. 891, 110 S.Ct. 236, 107 L.Ed.2d 187 (1989); *United States v. Chavez–Vernaza,* 844 F.2d 1368 (9th Cir.1987); *United States v. Pforzheimer,* 826 F.2d 200 (2d Cir.1987); *United States v. Rickus,* 737 F.2d 360 (3d Cir. 1984); *see also Federal Rule of Evidence 402.*

In their supplemental argument, defendants argue that the Ninth Amendment somehow requires that we apply state law to the search and seizure issue. The Ninth Amendment states that "the enumeration in the Constitution, of certain rights, shall not be construed to deny or disparage others retained by the people." Defendants cite *Oregon v. Hass,* 420 U.S. 714, 95 S.Ct. 1215, 43 L.Ed.2d 570 (1975), in support of their argument. The rationale of *Hass* as applied to this issue was specifically rejected by this court:

> *Hass* [does] say in dicta that a state may impose ... requirements more strict than those of the Fourth Amendment. Nor do we doubt their general applicability in state proceedings. Nevertheless, these cases applied the Fourth Amendment ... in cases of breach of state criminal codes.

*United States v. Combs,* 672 F.2d 574, 578 (6th Cir.), *cert. denied,* 458 U.S. 1111, 102 S.Ct. 3495, 73 L.Ed.2d 1374 (1982). Defendant also cites *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), which is also inapplicable to this issue.

■ The state may reserve certain rights including a stricter standard of search and seizure law; however, such a standard does not have to be applied in federal court. *Loggins,* 777 F.2d at 338. Defendants do not argue that under federal law the search in question was illegal. We conclude that the district court did not err in adopting the magistrate judge's report and recommendation denying defendant's motion to suppress the evidence.

## C. Attack on Sentencing Scheme

■ Defendants Webb and Allen contend that the five-year minimum sentence violated their rights to due process and equal protection because 21 U.S.C. § 841(b)(1)(B) along with the United States Sentencing Guidelines § 2D1.1 (Drug Quantity Table) irrationally provide that, in an offense involving fifty or more marijuana plants, each plant is equivalent of one kilogram of marijuana while offenses involving fewer than fifty plants are treated as if one plant is equal to one hundred grams of marijuana. The government argues that defendants failed to preserve this issue for appeal. According to the government and our review of the record, defendant Webb raises this issue for the first time in his Motion For Correction Of Sentence Pursuant to Federal Rule of Criminal Procedure 35(a)(2) filed May 2, 1991. The district court denied defendant Webb's motion by an order entered May 28, 1991. This denial of defendant's motion has not been appealed.

The general rule is that this court will not consider an issue not passed upon below. *Pinney Dock & Transp. Co. v. Penn Cent. Corp.,* 838 F.2d 1445, 1461 (6th Cir.), *cert. denied,* 488 U.S. 880, 109 S.Ct. 196, 102 L.Ed.2d 166 (1988). We choose not to deviate from the general rule as we do not find that these are "exceptional cases" or that the facts of these cases would give rise to "particular circumstances" or would produce a "plain miscarriage of justice" because of our decision not to consider this issue. *Id.* at 1461 (quoting *Hormel v. Helvering,* 312 U.S. 552, 557–58, 61 S.Ct. 719, 721–22, 85 L.Ed. 1037 (1941)).

## D. Quantity of Marijuana Plants

■ Both defendants argue that the district court erred in finding that there were more than 100 marijuana plants in defendants' marijuana patch. Findings of fact by the district court for the purpose of sentencing are not to be overturned on appeal unless they are found to be clearly erroneous. 18 U.S.C. § 3742(e). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." *Archer v. Macomb County Bank,* 853 F.2d 497, 499 (6th Cir.1988) (citations omitted). In this case, two officers testified that they had counted 122 marijuana plants. The only contrary testimony was that of co-defendant Gardner who testified that he counted 82 plants after a heavy rain storm had washed away many of the plants. However, Gardner also testified that initially he had planted 140 plants. Given the testimony of the officers, we conclude that the district court was not clearly erroneous in finding that there were over 100 marijuana plants and in sentencing defendants accordingly. Moreover, defendants conspired to manufacture 140 marijuana plants although some of the plants were washed away in a rain storm.

■ Defendant Webb makes an additional argument that his right to due process was violated by the government's destruction of the plants. Defendant argues that because of the destruction of the plants "the defense was not able to conduct an independent investigation regarding the number of plants and that crucial evidence was not available to the District Judge at sentencing." Defendant Webb's Brief at 22.

It is not clear whether defendant Webb raised this issue below. However, we find that his argument is without merit. Defendant fails to cite any authority to support his argument, and he does not contend that there was any bad faith on the part of the government in destroying the plants. According to the proof, the plants were counted and recounted. Given such evidence and no evidence of bad faith, defendant

Webb's due process rights have not been violated. *United States v. Newton*, 937 F.2d 609 (6th Cir.1991) (unpublished opinion); *see Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 337, 102 L.Ed.2d 281 (1988) ("We therefore hold that unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law."); *California v. Trombetta*, 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984). Regardless, as earlier stated, defendants conspired to manufacture 140 marijuana plants.

E. Sufficiency of the Evidence

Finally, defendant Allen argues that the evidence was insufficient to support his conviction. As this Court recently noted, in attacking the sufficiency of the evidence and the denial of motions for judgment of acquittal, a defendant has "a difficult burden to meet. When reviewing a denial of a motion to dismiss, we must consider all the evidence in a light most favorable to the government and then determine whether there is any evidence from which a reasonable jury could find guilt beyond a reasonable doubt." *United States v. Walton*, 908 F.2d 1289, 1294 (6th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 532, 112 L.Ed.2d 542 (1990). "This standard of review is the same whether evidence reviewed is direct or circumstantial." *United States v. Seltzer*, 794 F.2d 1114, 1119 (6th Cir.1986), *cert. denied*, 479 U.S. 1054, 107 S.Ct. 927, 93 L.Ed.2d 979 (1987). "Moreover, every reasonable inference from the evidence must be drawn in the government's favor." *United States v. Woods*, 877 F.2d 477, 479 (6th Cir.1989). In light of the overwhelming evidence against the defendants, defendant Allen's argument as to this issue is without merit.

### III.

For the foregoing reasons, we AFFIRM the defendants' convictions and sentences in all respects.