983 F.2d 1070
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Desmond S. NELSON; Michael A. Davis, Defendants-Appellants.
 Nos. 92-3168, 92-3175.
 United States Court of Appeals, Sixth Circuit.
 Jan. 21, 1993.
 
 Before BOYCE F. MARTIN and MILBURN, Circuit Judges, and WELLFORD, Senior Circuit Judge.
 WELLFORD, Senior Circuit Judge.
 
 
 1
 Defendants Nelson and Davis pled guilty to conspiring to distribute and to possess with intent to distribute cocaine, 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(iii). Each defendant challenges his sentence and more specifically, contests the base offense level as determined by the district court. The defendants argue that one kilogram of cocaine should not be included in the base amount because they were not reasonably capable of producing (or acquiring for distribution) that amount of cocaine. Davis also contests the two level enhancement imposed by the court for carrying a firearm during drug transactions. We AFFIRM Nelson's sentence in full and AFFIRM Davis' sentence in part and REVERSE it in part.
 
 
 2
 During March and April of 1991, an undercover officer, Sergeant Kulis, purchased quantities of cocaine and cocaine base from the two defendants on at least five different occasions.[1] Kulis admits that most of the plans to purchase cocaine were made with Nelson and not Davis because he could not understand Davis due to a speech impediment.
 
 
 3
 After several completed transactions, the officer met with the two defendants in April to negotiate the price of a kilogram of cocaine. During cross examination, Kulis admitted that "the majority of the discussion took place with Mr. Nelson." After agreeing on a price they discussed locating a "stash house" to store the cocaine. Nelson then asked the officer if he could get them two nine millimeter guns to help them "take care of business".[2]
 
 
 4
 When it came time to exchange the money and the cocaine, Davis explained to Kulis that the source had been arrested in the airport.[3] A few days later the two defendants attempted to arrange a sale of half of a kilogram of cocaine. Once again, a price was negotiated, but at no time were the defendants able to produce the amount required for such a purchase. The defendants were to meet Kulis with a two ounce sample of the new supplier's cocaine, but because Kulis feared a robbery, the defendants were arrested. At that time, neither possessed cocaine nor a weapon.
 
 
 5
 Prior to one of the buys, Kulis testified that he saw defendant Davis meeting with Joe Rowser, the original source, at a car wash where Kulis was to meet with Davis. During this meeting, Rowser handed a small bag to Davis. Kulis admitted, however, that the bag was so small it could not hold a kilogram of cocaine. Kulis then met with Davis several minutes later after Rowser left. No one met or talked to Davis until Kulis arrived. Upon arrival, Kulis purchased about five grams of cocaine from Davis.
 
 
 6
 At no time during the meetings with Kulis did the defendants mention that they were carrying weapons nor did they ever show a gun. Nelson was arrested for carrying a loaded nine millimeter pistol in mid-March, but no drugs were found in his presence at the time the gun was discovered. Those charges were dismissed.
 
 
 7
 Davis admitted to the probation officer during the preparation of the presentence report that he had carried a weapon on several occasions when making deliveries for Nelson at Nelson's request. Davis did not admit specifically to carrying a weapon during the drug transactions with Kulis, but he admitted that after Nelson was arrested in mid-March, he no longer had a gun to carry. Davis, also, explained to the probation officer that they could not obtain the negotiated one kilogram of cocaine because no one would "front" the cocaine without payment.
 
 
 8
 Davis pled guilty to one count and Nelson pled guilty to 6 counts of possession with intent to distribute cocaine. The district court decided during the sentencing hearing that it was
 
 
 9
 exceptionally clear to this Court that these defendants intended and expected to receive a kilogram of the 6 that Rowser was bringing to Columbus in order to complete their transaction.
 
 
 10
 There was not any indication in any negotiations with Detective Kulis that there would be any problem with their ability to finance that transaction. Those questions all arose after Rowser was arrested at the airport and that source was eliminated as the source for this negotiated deal.
 
 
 11
 ............................................................
 
 
 12
 ....................
 
 
 13
 * * *
 
 
 14
 Now, the fact that Rowser was arrested at the airport was a chance occurrence ... but for the fact that Mr. Rowser was arrested, the Court is of the firm belief that the transaction would have been completed.
 
 
 15
 The court decided that both of the defendants were reasonably capable of producing one kilogram of cocaine. The court then determined that the total offense level was 30 for both defendants. The court accepted the government's suggestion that Mr. Davis was merely a delivery boy for Nelson and thus, the court sentenced him on the lower range of the guidelines scale to 97 months. Nelson was sentenced to 108 months, and both defendants appealed.
 
 
 16
 I. INCLUSION OF ONE KILOGRAM OF COCAINE IN BASE LEVEL
 
 
 17
 The district court must determine the base offense level by a preponderance of evidence. United States v. Carroll, 893 F.2d 1502 (6th Cir.1990). We are restricted in our review of guideline cases to a clearly erroneous review of the facts and must also give due deference to the district court's application of the guidelines to those facts. 18 U.S.C. § 3742(e).
 
 
 18
 Application note 1 to § 2D1.4, United States Sentencing Guidelines (1991)[4] explains that
 
 
 19
 where the court finds that the defendant did not intend to produce and was not reasonably capable of producing the negotiated amount, the court shall exclude from the guideline calculation the amount that it finds the defendant did not intend to produce and was not reasonably capable of producing.
 
 
 20
 We have held that the district court shall not conclude that a conspirator is responsible for estimated drug quantities "unless the court can conclude the defendant is more likely than not actually responsible for a quantity greater than or equal to the quantity for which the defendant is being held responsible." United States v. Walton, 908 F.2d 1289, 1302 (6th Cir.), cert. denied, 111 S.Ct. 532 (1990). We have warned that a district court should err on the side of caution and not on the side of excessive sentences. Id. We, however, have determined that "the amount of the drug being negotiated, even in an uncompleted distribution, shall be used to determine the base level." United States v. Perez, 871 F.2d 45, 48 (6th Cir.), cert. denied, 492 U.S. 910 (1989).
 
 
 21
 Recently, we have held that once the government satisfies the burden in establishing a negotiated amount, then the burden shifts to the defendants to prove that they were not capable of producing that amount.[5] See United States v. Christian, 942 F.2d 363 (6th Cir.1991), cert. denied, 112 S.Ct. 905 (1992). The government has satisfied its burden.
 
 
 22
 The defendants argue that they were not capable of producing a kilogram because no one would "front" their purchase of a large amount of cocaine. Defendant Nelson failed to present any convincing evidence to satisfy the district judge that he had carried his burden to prove that he was not capable of producing or acquiring one kilogram of cocaine. The district court so held in its decision concluding that the problem did not arise until Rowser was arrested at the airport with six kilograms. Therefore, we hold that the district court did not err in its finding that Nelson should be responsible for the negotiated amount of one kilogram because he was reasonably capable of delivering one kilogram of cocaine and intended to acquire or produce it.
 
 
 23
 At the time of the presentence report submitted in this case, Davis was reflected to be a twenty-one year old Jamaican, a "transient" subject to an "immigration detainer" with a speech impediment. He had worked as a laborer and also delivered cocaine for Nelson. He had, in late 1990, suffered a serious gunshot wound which he claimed was accidental but had, nevertheless, incurred a large medical bill for treatment of the wound. The probation officer concluded that David had no assets and no ability to pay any fine within the guideline range, noting his "limited future earnings potential." He was a drug user but "noted no problems from his use." We have serious reservations about Davis' ability to fund a kilo of cocaine, but he was charged with conspiracy in assisting Nelson in a cocaine distribution scheme involving acquisition of this quantity. Were the charge only against Davis for the substantive drug offense set out in count one, we would agree with Davis' contention that he could not produce the necessary funds for such a quantity of drugs.
 
 
 24
 The problem is, therefore, more difficult with respect to defendant Davis who claims to be merely a "delivery boy". After reviewing the presentence report and the objections made thereto, this court, although it may question the propriety of Davis' sentence, cannot find it to be clearly erroneous.[6]
 
 
 25
 II. DEFENDANT DAVIS' POSSESSION OF A FIREARM DURING THE
 
 COMMISSION OF THE OFFENSE
 
 26
 Davis also claims that the determination that he possessed a firearm during the commission of the crime was clearly erroneous. The Sentencing Guidelines, § 1B1.3(a)(1), explains that the defendant may be held accountable for any acts or omissions "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense." The guidelines also provide that a firearm adjustment should be applied if a weapon was present, "unless it is clearly improbable that the weapon was connected with the offense." Application Note 3 to § 2D1.1 (1991).
 
 
 27
 We addressed a similar question in United States v. Duncan, 918 F.2d 647 (6th Cir.1990), cert. denied, 111 S.Ct. 2055 (1991), where we decided that an "[a]cquittal on a firearms carrying charge leaves ample room for a district court to find by the preponderance of the evidence that the weapon was possessed during the drug offense." Id. at 652. Unlike Duncan, the gun charges against Nelson were dismissed and were not associated with the drug offenses.
 
 
 28
 In United States v. Brown, 946 F.2d 1191, 1199 (6th Cir.1991), we determined that merely because the district court believed that the defendant was carrying a gun in count one for which he was acquitted, that belief does not support the finding that the defendant possessed a gun in the drug transaction in count three. This court explained further that
 
 
 29
 While the sentencing judge may have assumed that because [the defendant] carried a firearm earlier on November 14 he also carried one later that day, the only basis for such an assumption is conjecture, and conjecture is not enough to support an enhancement under § 2D1.1(b)(1).
 
 
 30
 Id.
 
 
 31
 The district court, in the case at hand, determined that
 
 
 32
 The statements by Mr. Davis about this gun were clearly against his interest and that certainly adds to their credibility.
 
 
 33
 In fact, as a result of these admissions on his part, he was assessed a two level enhancement for possession of a firearm during the commission of a drug offense and the Court is persuaded by a preponderance of the evidence that, in fact, Mr. Nelson did give this gun to Mr. Davis for his use in protecting himself and the drugs and money and that Mr. Nelson was aware that the gun was being so used, so it was foreseeable
 
 
 34
 * * *
 
 
 35
 In this case, the gun charge against Nelson was dropped and at no time, were any drugs found on Nelson when the gun was found. Davis[7] admits that he occasionally carried a gun during cocaine sales at Nelson's request but there was no gun mentioned during any of the buys with Kulis.
 
 
 36
 In light of our precedent, we are satisfied that there is not a preponderance of the evidence that Davis possessed a gun during the drug transactions with Kulis. This factual finding to the contrary by the district court we deem to be clearly erroneous. This court, therefore, REVERSES the two level enhancement for Davis' sentence, and REMANDS for further sentencing of defendant Davis accordingly.
 
 
 
 [1]
 The amounts of cocaine sold to Kulis consisted of a quantity between 2.9 grams and 17.5 grams. Overall, the defendants actually delivered 33.1 grams of cocaine base and 12.8 grams of cocaine powder. Also, 1056.7 grams of cocaine powder were negotiated but were never delivered or produced
 
 
 [2]
 No such guns were obtained by Sergeant Kulis
 
 
 [3]
 The officer later verified that two days prior to this meeting, Joseph Rowser was arrested in the Port Columbus International Airport possessing 6 kilograms of cocaine. When Mr. Rowser was debriefed by the authorities, he explained that the cocaine was to be delivered to Leonard Gordon with its final destination unknown. Mr. Rowser admitted knowing and having meetings with the two defendants but claimed he had never had any drug dealings with them. (Sergeant Kulis testified differently. See infra )
 
 
 [4]
 This section has been deleted from the 1992 guidelines with the instructions to turn to a different section
 
 
 [5]
 The defendants contest this shifting of the burden claiming it is a violation of their due process rights. This court has determined that any factors which can reduce the sentence of the defendant must be proved by that defendant. See United States v. Rodriguez, 896 F.2d 1031 (6th Cir.1990). In this case, the district court found that the government established by a preponderance of evidence that the defendants intended and were reasonably capable of producing one kilogram of cocaine. The defendants, then, had the burden to prove the contrary
 
 
 [6]
 No objection was made as to Davis' role in the offense and thus, his role, whether or not he was a minor or minimal participant, is not properly before this court. See United States v. Allen, 954 F.2d 1160, 1168 (6th Cir.1992). Davis has waived this argument, because it was not raised below
 
 
 [7]
 Nelson did not raise this argument and thus, cannot be afforded any relief