985 F.2d 562
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Glen D. YOUNG, Defendant-Appellant.
 No. 92-5502.
 United States Court of Appeals, Sixth Circuit.
 Jan. 29, 1993.
 
 Before BOYCE F. MARTIN, JR., MILBURN and ALAN E. NORRIS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant Glenn David Young appeals the judgment of the district court finding him guilty of attempting to cause his employer to fail to file Internal Revenue Service Form 8300 in violation of 26 U.S.C. §§ 7203 and 6050I(f)(1)(A). On appeal, the principal issues are (1) whether the district court erred in failing sua sponte to dismiss Count II of the indictment, to which defendant pled guilty, (2) whether the district court erred in computing defendant's offense level under United States Sentencing Guidelines ("U.S.S.G.") § 2S.1.3, and (3) whether the district court erred in refusing to grant defendant a downward departure under U.S.S.G. § 5K1.1 or § 5K2.0. For the reasons that follow, we affirm.
 
 I.
 
 2
 Defendant was initially charged in a two-count indictment which alleged in Count I that he unlawfully structured a payment of approximately $17,000 in order to avoid the filing of a Form 8300 Report by his employer, Kelly Cadillac SAAB Subaru, Inc., ("Kelly Cadillac") to the Internal Revenue Service in violation of 26 U.S.C. §§ 6050I(f)(1)(C) and 7203. Count II charged defendant with willfully causing Kelly Cadillac to fail to make the Form 8300 Report to the Internal Revenue Service in violation of 26 U.S.C. §§ 6050I(f)(1)(A) and 7203.
 
 
 3
 On January 9, 1992, defendant pled guilty to Count II of the indictment pursuant to a plea agreement. The parties agreed to the factual basis supporting defendant's plea, and this was delivered to the court as follows:
 
 
 4
 At all times relevant to this plea agreement, the defendant, Glenn David Young, was working as a car salesman for Kelly Cadillac Saab Subaru Inc. (hereafter, "Kelly Cadillac"), which business is located in the Eastern District of Tennessee. In the past, Young had sold several automobiles to an individual named Victor Findley, which automobiles had been titled in the names of Findley's family members. On June 7, 1990, Findley had sold to Kelly Cadillac a 1990 Cadillac for the sum of $19,000. On June 30, 1990, Findley had taken a Mazda automobile for a test period to determine whether he would purchase that car. On the afternoon of July 2, 1990, Findley agreed to purchase the vehicle and was advised that he would have to either pay for the vehicle or return it. Findley agreed to bring the money to Young that evening. On the evening of July 2, 1990, Findley gave to Young at Young's residence $17,632.96 in cash currency for the purchase of the Mazda which Findley wanted titled in the name of his mother, Quida Findley.
 
 
 5
 Under the law, specifically, 16 U.S.C. [sic, 26 U.S.C.] Section 6050(I) and 26 C.F.R. Section 1.6050I, the recipient of cash in excess of $10,000 by any person engaged in a trade or business must file a Form 8300 return with the Internal Revenue Service within 15 days. Kelly Cadillac, as the taxpayer and recipient of the money, would have had that legal responsibility. By virtue of Young's employment, he neither had the responsibility nor the duty to file the Form 8300. However, on July 3, 1990, when Young was initially about to turn the money over to Linda Franklin, the controller of Kelly Cadillac, Young was advised that he needed to obtain the social security number of Quida Findley for the filling out of the Form 8300. At that time, Young stated words to the effect that "Victor already had enough trouble with the IRS" and then failed to turn over the money. Later that same day young turned in an $8,500 cashier's check (that he had enlisted his wife to purchase from the TVA Credit Union) and $9,132.96 in cash currency to the controller of Kelly Cadillac. He obtained a single receipt for the funds totalling $17,632.96. Young willfully and knowingly took the actions that he took.
 
 
 6
 On July 3, 1990, IRS Special Agent Lynn Barker was investigating Victor Findley and his expenditures. Barker went to the offices of Kelly Cadillac and inquired about transactions involving Victor Findley. Barker was informed about the most recent transaction and, when he questioned Young about it, Young admitted all of the facts related herein.
 
 
 7
 On March 23, 1992, the district court conducted a sentencing hearing in which defendant raised several matters concerning the calculation of his offense level and in which he objected to the failure of the government to file a motion for a downward departure pursuant to U.S.S.G. section 5K1.1. After adjourning this hearing and reconvening it on March 30, 1992, the district court sentenced defendant to four months of imprisonment and fined him $3,000. This timely appeal followed.
 
 II.
 A.
 
 8
 Defendant's first argument is muddled and difficult to comprehend. Although the caption to his argument indicates that he assigns error to the district court for allowing him to be convicted under an "indictment [that] failed to charge an offense for which the defendant could be convicted," Brief of Appellant at 7, defendant does not quarrel with the language of the indictment nor seek in his brief to show that it does not comport with the statutes in question, 26 U.S.C. §§ 6050I(f)(1)(A) and 7203. Indeed, defendant made no motion to dismiss the indictment on these, or any other, grounds.
 
 
 9
 Instead, the thrust of defendant's argument seems to be that the stipulated facts supporting his plea do not in fact make him guilty of violating 26 U.S.C. § 6050I(f)(1)(A), which on the date of the alleged defense read as follows:
 
 
 10
 (f) Actions by payors.
 
 
 11
 (1) In general--No person shall for the purpose of evading the return requirements of this section--(A) cause or attempt to cause a trade or business to fail to file a return required under this section.
 
 
 12
 Defendant argues that, despite his guilty plea and despite his failure to move for dismissal, the district court should have recognized that he was not a "payor" within the meaning of the heading of subsection (f) and, therefore, Count II should have been dismissed by the court sua sponte. Apparently, it is defendant's position that he was not a "payor" because, according to defendant, "payor" means "customers or clients of persons engaged in trade or business who cause or attempt to cause a trade or business to fail to file the required return...." Brief of Appellant at 8. Since he was not a customer or client of his employer, defendant argues that the statute does not apply to him. He further argues that Congress' amendment of the heading of subsection (f), effective November 5, 1990, bolsters his argument. The heading was changed to read: "(f) Structuring transactions to evade reporting requirements prohibited."
 
 
 13
 The government responds that defendant conceded his guilt by his guilty plea, that this issue was not properly raised in the district court, and that, in any event, defendant was a "payor" because, at the time he structured the payments in question, he was not acting as an agent of Kelly Cadillac, which was indifferent to the form of its payment, but was acting on behalf of his friend and customer, Victor Findley, and was to that extent a "payor."
 
 
 14
 As a general rule, nonjurisdictional issues not raised in the district court may not be presented for review on appeal. United States v. Allen, 954 F.2d 1160, 1168 (6th Cir.1992); Pinney Dock & Transp. Co. v. Penn Cent. Corp., 838 F.2d 1445, 1461 (6th Cir.), cert. denied, 488 U.S. 880 (1988). Defendant did not raise this issue in the district court and may not now do so.
 
 
 15
 Moreover, defendant's argument is foreclosed by the holding in United States v. Broce, 488 U.S. 563 (1989). In Broce, the Supreme Court held that
 
 
 16
 [a] plea of guilty and the ensuing conviction comprehend all of the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence. Accordingly, when the judgment of conviction upon a guilty plea has become final and the offender seeks to reopen the proceeding, the inquiry is ordinarily confined to whether the underlying plea was both counseled and voluntary.
 
 
 17
 Id. at 569.
 
 
 18
 The defendant in Broce pled guilty to two separate conspiracies, then moved to set aside his guilty pleas when a related case involving other defendants made it appear that only one conspiracy existed in fact. The Supreme Court rejected defendant's attempt to reopen his guilty pleas and reversed an en banc decision of the Tenth Circuit which "was predicated on the [circuit] court's view that, in pleading guilty, respondents admitted only the acts described in the indictments, not their legal consequences." Id. The Supreme Court held that a guilty plea is more than an admission by a defendant that he did the acts described in the indictment: it is the plenary admission of guilt of the crime charged.
 
 
 19
 In holding that the admissions inherent in a guilty plea "go only to the acts of the conspiracy," 781 F.2d at 796, the Court of Appeals misapprehended the nature and effect of the plea. A guilty plea "is more than a confession which admits that the accused did various acts." Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969). It is an "admission that he committed the crime charged against him." North Carolina v. Alford, 400 U.S. 25, 32, 91 S.Ct. 160, 164, 27 L.Ed.2d 162 (1970). By entering a plea of guilty, the accused is not simply stating that he did the discreet acts described in the indictment; he is admitting guilt of a substantive crime.
 
 
 20
 Id. at 570. See Kowalak v. United States, 645 F.2d 534, 537 (6th Cir.1981) (holding that a valid guilty plea waives all nonjurisdictional defects or errors).
 
 
 21
 The defendant in this case cannot plead guilty to a count of the indictment, then contend for the first time on appeal that his acts did not make him guilty of the offense charged in that count. Defendant has waived his argument twice, first by failing to raise it in the district court, second by pleading guilty. He may not now contest his guilt of the offense described in Count II of the indictment.
 
 B.
 
 22
 Defendant next argues that the district court erred in computing his sentence under U.S.S.G. § 2S1.3, which reads:
 
 
 23
 § 2S1.3 Failure to Report Monetary Transactions; Structuring Transactions to Evade Reporting Requirements.
 
 
 24
 (a) Base Offense Level
 
 
 25
 (1) (13), if the defendant:
 
 
 26
 (A) structured transactions to evade reporting requirements; or
 
 
 27
 (B) made false statements to conceal or disguise the activity; or
 
 
 28
 (C) reasonably should have believed that the funds were criminally derived property;
 
 
 29
 (2) 5, otherwise.
 
 
 30
 Defendant contends that the district court improperly computed his base level at 13 because he did not plead guilty to structuring a transaction, as charged in Count I of the indictment. Rather, he pled guilty to Count II which charged him with causing Kelly Cadillac to fail to file the required report. Thus, he concludes that none of the three provisions of U.S.S.G. § 2S1.3(a)(1) apply to his conduct, and, therefore, his base offense level should have been only level 5.
 
 
 31
 The district court entered a memorandum opinion finding that defendant's actions amounted to the structuring of a transaction as defined in 31 C.F.R. § 103.11(p), which reads as follows:
 
 
 32
 Structure (structuring). For purposes of section 103.53, a person structures a transaction if that person, acting alone, or in conjunction with, or on behalf of, other persons, conducts or attempts to conduct one or more transactions in currency, in any amount, at one or more financial institutions, on one or more days, in any manner, for the purpose of evading the reporting requirements under section 103.22 of this part. "In any manner" includes, but is not limited to, the breaking down of a single sum of currency exceeding $10,000 into smaller sums, including sums at or below $10,000, ... The transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution on any single day in order to constitute structuring within the meaning of this definition.
 
 
 33
 The district court concluded that defendant's activities fit this regulation's definition of structuring, and, accordingly, it determined defendant's base offense level to be level 13.
 
 
 34
 Defendant's rebuttal to the district court's conclusion is based on his reading of 26 C.F.R. § 1.605(I)-1(c)(7)(i) which defines "transaction" as "the underlying event precipitating the payer's transfer of cash to the recipient." Defendant contends that the "underlying event" was his sale of the automobile to Victor Findley and that the sale of the vehicle had not been structured in any way, even though the payment for it may have been. Unfortunately for defendant, the regulation he relies on gives examples to illustrate the definition of "transaction":
 
 
 35
 (iii) The following examples illustrate the definition of paragraphs (c)(7)(i) and (ii).
 
 
 36
 Example (1). A person has a tacit agreement with a gold dealer to purchase $36,000 in gold bullion. The $36,000 purchase represents a single transaction under paragraph (c)(7)(i) of this section and the reporting requirements of this section cannot be avoided by recasting the single sales transaction into 4 separate $9,000 sales transactions.
 
 
 37
 26 C.F.R. § 1.6050I-1(c)(7)(iii). If this example illustrates the definition of "transaction" as the regulation says, then defendant's conduct, being well within the example, constituted a transaction. Thus, defendant's rebuttal fails.
 
 
 38
 Defendant's arguments fail for another reason. The underlying facts of his case show that he structured a transaction in violation of the statute. Although he pled guilty, not to structuring, but to attempting to cause his employer to fail to file the required form, it seems obvious that defendant attempted to cause the failure by structuring the transaction in such a way that no form would be filed. Thus, the structuring was the means by which defendant carried out his attempt, and it was therefore proper to set his base offense level at level 13 because he "structured transactions to evade reporting requirements...." U.S.S.G. § 2S1.3(a)(1)(A).
 
 
 39
 Under 18 U.S.C. § 3742(e), this court must give "due deference to the district court's application of the guidelines to the facts." Thus, we hold that the district court's application of the guidelines to the facts in this case is not erroneous.
 
 C.
 
 40
 Defendant also argues that the district court erred in refusing to grant him a downward departure under U.S.S.G. §§ 5K1.1. He contends that, in his plea agreement, he bargained for a motion by the government to depart from the guidelines based on his substantial assistance to law enforcement. He cites Santobello v. New York, 404 U.S. 257 (1971), as authority for his right to specific performance of the plea agreement.
 
 
 41
 The plea agreement in this case, however, merely provides that the government reserves unfettered discretion in the decision to file such a motion:
 
 
 42
 The United States agrees that if the defendant provides substantial assistance pursuant to United States Sentencing Guidelines § 5K1.1, the United States will make a motion under that section at the appropriate time. The defendant understands and agrees that the decision to make that motion rests solely within the government's discretion and that discretion may not be the subject of review by any court.
 
 
 43
 (Emphasis added).
 
 
 44
 Under the terms of this agreement, the government reserved the right to make an unquestionable determination about the value of defendant's assistance and the advisability of filing a motion under § 5K1.1. Evidently, the government determined that the motion was not warranted by defendant's performance. Because the plea agreement reserves to the government the complete discretion to make that determination, we hold that there was no breach of the agreement in the government's refusal to file the motion in question.
 
 
 45
 Moreover, the Supreme Court has recently held that the government's discretion to withhold the filing of a motion under § 5K1.1 may be reviewed only to determine whether the exercise of that discretion may have been based on an unconstitutional motive.
 
 
 46
 Because we see no reason why courts should treat a prosecutor's refusal to file a substantial-assistance motion differently from a prosecutor's other decisions, we hold that federal district courts have authority to review a prosecutor's refusal to file a substantial-assistance motion and to grant a remedy if they find that the refusal was based on an unconstitutional motive. Thus, a defendant would be entitled to relief if a prosecutor refused to file a substantial-assistance motion, say, because of the defendant's race or religion.
 
 
 47
 It follows that a claim that a defendant merely provided substantial assistance will not entitle a defendant to a remedy or even to discovery or evidentiary hearing. Nor would additional but generalized allegations of improper motive.
 
 
 48
 Wade v. United States, --- U.S. ----, 112 S.Ct. 1840, 1843-44 (1992) (citations omitted). Defendant argues only that he was of substantial assistance to the government, and, therefore, the § 5K1.1 motion should have been filed. As the Supreme Court has held, that argument fails. The government's discretion in this regard may be reviewed only for unconstitutional motives, and defendant made no such allegations in this court or in the district court. That being the case, the government's exercise of its reserved discretion is unreviewable. See United States v. Levy, 904 F.2d 1026, 1035 (6th Cir.1990) (holding that district court may consider a downward departure pursuant to § 5K1.1 only on motion of the government), cert. denied, 111 S.Ct. 974 (1991).
 
 D.
 
 49
 Defendant finally argues that the district court abused its discretion in refusing him a downward departure under U.S.S.G. § 5K2.0, which permits a downward departure in circumstances where the court finds
 
 
 50
 [T]hat there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described.
 
 
 51
 U.S.S.G. § 5K2.0, p.s.
 
 
 52
 Defendant contends that he is entitled to this departure because he received no monetary gain from the offense, the offense resulted from a spur-of-the-moment decision to help a friend, and the offense was revealed to a special agent of the Internal Revenue Service within hours of its commission.
 
 The short answer to this argument is that
 
 53
 a district court's refusal to depart downward from a sentence within the properly computed guideline range is not appealable.
 
 
 54
 United States v. Pickett, 941 F.2d 411, 417-18 (6th Cir.1991) (collecting Sixth Circuit cases).
 
 III.
 
 55
 For the reasons stated, the judgment of the district court is in all respects AFFIRMED.