27 F.3d 568
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Virgil Maurice WALKER, Defendant-Appellant.
 No. 91-3001.
 United States Court of Appeals, Sixth Circuit.
 June 22, 1994.
 
 Before: KENNEDY and BATCHELDER, Circuit Judges; and CONTIE, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Defendant Virgil Maurice Walker appeals his jury conviction and sentence for conspiracy to possess with intent to distribute and to distribute cocaine. 21 U.S.C. Sec. 841(a)(1). He argues that there was insufficient evidence of his involvement in the alleged conspiracy to support his conviction and that the court improperly calculated the quantity of drugs attributable to him at sentencing. The court reporter at the sentencing hearing died before he transcribed his notes and only a small portion of the notes could be transcribed by other reporters. Pursuant to Fed.R.App.P. 10(c), the District Court supplemented the record by submitting a certified statement, agreed upon by both parties, of its findings on the quantity issue. For the reasons that follow, we affirm defendant's conviction but vacate his sentence and remand this case for resentencing.
 
 I.
 
 2
 The United States presented evidence of a Florida to Ohio cocaine conspiracy. According to the United States' theory of the case, defendant and Anthony Jones supplied cocaine from their base in Miami, Florida. Kevin Young, the head of the organization in Youngstown, Ohio, arranged for the purchase of the drugs from the Florida suppliers and with the aid of Kevin Brown and Anthony Haynes distributed the cocaine.
 
 
 3
 At trial, Young was the United States' star witness. In exchange for concessions relevant to Sentencing Guidelines issues, Young pled guilty to the conspiracy and testified for the United States. Young described the conspiracy and its participants with great detail. The picture emerged as follows: In early 1989, defendant and Young set up the Florida/Ohio connection with defendant selling cocaine to Young. The transactions always involved large amounts of cash and kilo-quantities of cocaine. Defendant would either mail the cocaine via Federal Express or have a courier deliver it personally. At least once, a switch was arranged at the airport in Cleveland--a suitcase of cocaine for a suitcase of money. According to Mahoning County Police Officers David Allen and Laszlo Simonyi, who witnessed the airport transaction, Jones arrived from Florida and picked up a garment bag from a companion of Young's, which presumably contained cash that Jones would deliver to defendant. Jones was not at the airport more than twenty minutes before he took off to return to Florida. Other times, Jones would travel to Ohio to pick up the cash, return to Florida and give the money to defendant; the cocaine would then be shipped a couple of days later to Young. The United States also introduced tape recordings of telephone conversations between Young in Ohio and defendant in Florida. On the tapes, the two negotiated selling prices, how and when a particular sale or transaction would take place and discussed past transactions.
 
 
 4
 Evidence is sufficient to support a conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This Court must draw all reasonable inferences in the government's favor. United States v. Allen, 954 F.2d 1160, 1169 (6th Cir.1992). When reviewing the denial of a motion for acquittal, we employ an identical standard. United States v. Busacca, 936 F.2d 232, 239 (6th Cir.) (quoting the Jackson standard), cert. denied, 112 S.Ct. 595 (1991). Defendant made the requisite Rule 29 motions, which were denied, to preserve the issue for appeal.
 
 
 5
 Defendant complains that much of the evidence at trial related to Young's cocaine distribution network in Youngstown, Ohio. Most witnesses did not implicate defendant in this conspiracy. Defendant's conviction was based in large part on the testimony of Young, including Young's explanation of the recorded conversations between himself and defendant. Defendant alleges that Young had reasons to fabricate his testimony because he had an intense dislike for defendant. Defendant also alleges that Young's testimony is incredible because of the deal he made with the United States.
 
 
 6
 We believe that there was ample direct evidence from which a jury could conclude that defendant was the supplier in the Florida/Ohio cocaine conspiracy. The jury was free to disbelieve Young after assessing his credibility and incentives to testify. Instead, it chose to believe Young's testimony implicating defendant.
 
 II.
 
 7
 A sentencing hearing was conducted on December 20, 1990 on the issue of the quantity of cocaine to be attributed to defendant. The jury had found that defendant was accountable for more than five-hundred grams but less than five kilograms of cocaine. At the sentencing hearing, the United States contended that defendant should be sentenced for the more appropriate amount of between fifteen and forty kilograms. The court sentenced defendant for five kilograms, which resulted in an offense level of 32. The court adopted the factual findings and guideline application of the presentence report ("PSR"), which was prepared before the probation officer had information relative to defendant's offense conduct. In arriving at the five kilogram quantity, the PSR apparently used the five kilogram amount alleged in Count I of the indictment. With a criminal history category of I, the resultant sentencing range was from 121 to 151 months. The court sentenced defendant to 151 months of imprisonment and five years of supervised release; imposed a $10,000 fine; and charged defendant $12,000 for the cost of imprisonment. Because the offense involved five kilograms of cocaine, defendant must serve a minimum of ten years, 21 U.S.C. Sec. 841(b)(1)(A)(ii).
 
 
 8
 The only portion of the sentencing transcript that we have is the testimony of Young and Haynes, offered by the United States. There is no transcript of the court's findings. The court reporter is deceased and despite efforts by counsel and the court, it has not been possible to find a reporter able and willing to read and transcribe the balance of the hearing. Upon order of this Court, defendant submitted a statement of proceedings pursuant to Rule 10(c) on April 12, 1994. Subsequently, defendant and the United States made a joint motion for the court to adopt a mutually agreed upon statement. On May 4, 1994, the District Court adopted the proposed statement in which the court summarized and reported what occurred at the sentencing hearing:
 
 
 9
 After considering the evidence I heard at trial, the evidence presented at the Sentencing hearing, and all arguments of counsel, I conclude[d] that Virgil Walker had distributed more than five (5), but fewer than fifteen (15), kilograms of cocaine into the Northern District of Ohio. I concluded, therefore, that the Base Offense Level under Sentencing Guideline Sec. 2D1.1 was 32.
 
 
 10
 Thus, the record has been supplemented with the District Court's Fed.R.App.P. 10(c) statement. Although the court's quantity determination will not be disturbed unless it is clearly erroneous, United States v. Medina, 992 F.2d 573, 590 (6th Cir.1993), the court's findings are not sufficiently specific for us to review. The District Court failed to identify any of the evidence on which it relied. See United States v. Baro, 15 F.3d 563, 569 (6th Cir.1994). If a court fails to make sufficient findings, the proper remedy is to remand for more specific findings. Id. at 569.
 
 III.
 
 11
 Defendant's conviction is AFFIRMED. The sentence, however, is vacated and the action remanded for resentencing with specific findings as to the drug quantity for which defendant was responsible.