**UNITED STATES of America, Plaintiff-Appellee,**

v.

**James Edward THOMPSON, Defendant-Appellant.**

**No. 18811.**

United States Court of Appeals Sixth Circuit.

April 4, 1969.

---

J. Harold Ellis, Memphis, Tenn., for appellant.

Bart C. Durham, III, Asst. U. S. Atty., Memphis, Tenn., for appellee; Thomas L. Robinson, U. S. Atty., Memphis, Tenn., Fred M. Vinson, Jr., Asst. Atty. Gen., Dept. of Justice, Criminal Division, Washington, D. C., on brief.

Before EDWARDS, CELEBREZZE and PECK, Circuit Judges.

EDWARDS, Circuit Judge.

The only issue presented in this case— a difficult one—is whether or not the arrest of appellant and the subsequent search of his car were violations of the Fourth Amendment to the Constitution of the United States. This issue was tried on appellant's motion to suppress evidence (the 30 gallons of non-tax-paid corn whiskey which was found in the trunk of his car). A District Judge for the Western District of Tennessee, Western Division, denied the motion to suppress and subsequently found appellant guilty of violating the federal liquor excise tax laws on the basis of the same

testimonial record. Prosecution and defense had stipulated that the principal case should be tried on the evidentiary record made on the motion to suppress.

The critical evidence pertaining to the arrest was presented by Memphis Police Officer Mattingly. He testified that he and his partner were seated in a parked police car which had radar speed detection equipment and that a Tennessee Alcoholic Beverage Commission officer, Holt, was in the car with them.

We employ hereafter the critical facts as found by the District Judge, but observe that we have read the entire testimonial record and believe that these findings are adequately supported therein:

"[T]he defendant, from their rear, passed the officers driving at a slow rate of speed in his Pontiac automobile. As he did so, Holt remarked that the automobile looked familiar, and one of the police officers, Mattingly, his attention having been drawn to the car, noticed that the city inspection sticker on the windshield did not look right. He therefore started up the police car and overtook defendant to get a better look at the sticker. Upon doing so, he observed that, though it was not yet out-of-date, it looked faded and was surrounded by an excess of glue, indicating to him that the sticker had illegally been moved from another car to this one. The officers therefore dropped behind defendant, and their flashing red light and siren were turned on, causing defendant to pull over and stop.

"As he came to a stop, defendant got out of his car and met the approaching officers who had also gotten out of their car. The city police officers were questioning defendant about the sticker and his driver's license, when Holt, the State officer, asked defendant his name. Upon giving his name, Holt realized for the first time that he knew defendant, and he knew that defendant had before been involved in illicit liquor. At about the same time, Holt smelled moonshine whiskey (which has a distinctive odor) at the rear of defendant's car. Holt also had noticed that the rear of the car was riding low. He then indicated to defendant that he thought there was whiskey in the trunk, to which defendant replied that he was indeed 'loaded.' The trunk was then opened, the thirty gallons of moonshine whiskey was seized, and defendant was placed under arrest for violation of the liquor laws."

The District Judge concluded:

"As stated, defendant was stopped because of the appearance of the inspection sticker, and this was not a subterfuge to obtain other information."

■ On this appeal what appears to us really to be at issue is whether or not the law enforcement officers who testified fabricated evidence to support the lawfulness of their conduct. Clearly, if a police officer saw an inspection sticker so faded as to suggest that it had been water soaked off one car and so surrounded with glue as to suggest that it had been affixed to appellant's car with other than its own adhesive, he would have probable cause to believe that appellant was in his presence violating the Memphis ordinance [1] prohibiting such a transfer. T.C.A. § 40–803(1) provides: "An officer may, without a warrant, arrest a person: (1) For a public offense [misdemeanor] committed or a breach of the peace threatened in his presence. * * *" *See also* Robertson v. State, 184 Tenn. 277, 198 S.W.2d 633 (1947); Goodwin v. State, 148 Tenn. 682, 257 S.W. 79 (1923); Roberson v. Metropolitan Government, 56 Tenn.App. 729, 412 S.W.2d 902 (1966).

Appellant contends that no such facts were true—that the sticker was entirely normal in appearance. He also contends that anyhow, the police when parked at the curb were obviously not in a position to observe the appearance of the sticker

---

1. Memphis Tenn. Code §§ 23–91, 23–92, 23–93.

if there had been anything wrong with it. Officer Mattingly, however, testified:

"Q. Where was Mr. Thompson's car when Mr. Holt said he thought he knew that car which caused you to look at it particularly? Was it beside you?

"A. Yes, sir, it was moving slowly approximately fifteen or twenty miles an hour, and he said, 'I think I know that car.', and at that time I just looked over at it, and I noticed that glue was smeared around the inspection sticker there. Of course, at that time, I could not see the other side of the inspection sticker.

"Q. And when you pulled up beside him, you got a better look?

"A. Yes, sir.

"Q. At that time were you flashing your light and did you have your siren going?

"A. I pulled up beside to get a better look before I hit the siren, and then when I pulled up, I could see that it was badly faded."

Violation of the Memphis ordinance was not, of course, finally established even by detailed inspection at the scene. But subsequent comparison of the serial number assigned to this sticker with city records established that in fact this sticker had been issued for a car other than the one which appellant was driving. This fact tended to rebut appellant's claim of a search on pretext and to offer important confirmation of the Memphis police officer's testimony as to what he claimed he saw *before* the arrest.

■ The decision to stop under the authority of the siren, uniforms, and flashing lights we deem to be an arrest. It is certainly, in our opinion, an interference with liberty in a significant way. Miranda v. Arizona, 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). But (for the reasons above and those detailed in the District Judge's opinion) we believe that state law authorized the police officers concerned to make the arrest on the evidence they then had of a violation of the ordinance of the City of Memphis committed in their presence.

■ The search of the trunk still remains to be dealt with. This court has previously held:

"It is the view of this court that the constitutional reasonableness or unreasonableness of a search or seizure should be related not only to the circumstances which occasion the arrest or search (probable cause), but also to the purpose and extent of the interference with liberty represented by the arrest or search. *See* Agnello v. United States [269 U.S. 20, 46 S.Ct. 4, 70 L.Ed. 145 (1925)]; United States v. Lefkowitz, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932)." United States v. Baxter, 361 F.2d 116, 119–20 (6th Cir. 1966).

No suggestion is made that the arrest for the illegal sticker justified the search of the trunk. We think it is obvious that there were two separate decisions made in this episode; the decision to stop and the decision to search. Justification of this search rests separately upon probable cause to believe that appellant was committing a felony.

■ On stopping the car, the officers noted that the automobile was low in the rear, as if it had a heavy load, and both officers testified to the smell of moonshine whiskey. The Tennessee Alcoholic Beverage Commission officer also testified that seeing appellant Thompson and hearing his name brought back detailed memories of him and his car and their prior association with illegal whiskey. These facts, we believe, represented reasonable grounds for believing that the car was being used to transport non-taxpaid whiskey, in violation of both state and federal law. United States v. Baxter, 361 F.2d 116 (6th Cir. 1966).

■ Finally, appellant asserts that his case was prejudiced by the fact that on the hearing of his motion to suppress, the District Judge required him to go forward with his proofs. He relies in this contention upon the fact that he

filed an affidavit with his motion. The movant, however, has the obligation to present evidence in court (as opposed to by affidavit) designed to convince the court that his motion should be granted. United States v. Okawa, 26 F.R.D. 384 (D.Hawaii 1961); United States v. Warrington, 17 F.R.D. 25 (N.D.Cal.1961). *See also* Nardone v. United States, 308 U.S. 338, 60 S.Ct. 266, 84 L.Ed. 307 (1939); Fullbright v. United States, 392 F.2d 432 (10th Cir.), cert denied, 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101 (1968); United States v. Masterson, 383 F.2d 610 (2d Cir. 1967), cert. denied, 390 U.S. 954, 88 S.Ct. 1048, 19 L.Ed.2d 1147 (1968); Comment, Procedural Problems of a Motion to Suppress Evidence in a Federal Criminal Case, 1 U.S.F.L.Rev. 188 (1966). Once he has presented a prima facie case of illegal search, the government must assume the burden of proof that any search made was lawful. United States v. Burhannon, 388 F.2d 961 (7th Cir. 1968). We believe this burden was carried.

We find no error in the rulings of the District Court on this issue.

The judgment of the District Court is affirmed.