NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 08a0393n.06
Filed: July 1, 2008

No. 06-6499

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| DANIEL FRANKLIN, | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF TENNESSEE |
| Defendant-Appellant. | ) | |

Before:     KEITH and CLAY, Circuit Judges; and STEEH, District Judge.[*]

**DAMON J. KEITH, Circuit Judge.** Defendant Daniel Franklin appeals the district court order denying his motion to suppress evidence. For the following reasons, we **AFFIRM** the district court's denial of Defendant's motion.

I. FACTUAL BACKGROUND

On December 19, 2005, a federal grand jury in the Western District of Tennessee returned an indictment charging the defendant, Daniel Franklin, with two counts of violating 18 U.S.C. § 922(g), which prohibits felons from possessing firearms and ammunition. On May 16, 2006, the defendant filed both a motion to suppress evidence and an amended motion to suppress evidence seized pursuant to a search warrant executed at a residence. The amended motion raised three issues

_____

[*]The Honorable George Caram Steeh, United States District Judge for the Eastern District of Michigan, sitting by designation.

challenging the search warrant and the lawfulness of the police entry of the residence. The amended motion also asserted that the defendant's custodial statements should be suppressed as the tainted fruit of the illegal search.

After receiving additional discovery, the defendant filed a supplement to his motion to suppress. In addition to the previously identified issues, the defendant averred that the warrant was signed by a Henderson County general sessions court judge who did not have the authority to issue a search warrant for Madison County. This latter issue is the sole matter presented on appeal. On June 8, 2006, the government filed a response to the defendant's motion to suppress. Government counsel asserted that the warrant was lawfully issued by a general sessions court judge, and thus was valid.

On July 17, 2006, a hearing on the suppression motion was held before Judge James D. Todd, Chief Judge for the United States District Court for the Western District of Tennessee. At the hearing, Terry Dyer, a police officer with the Jackson, Tennessee, Police Department, testified as to his efforts to obtain a search warrant. Mr. Dyer stated that on the day he attempted to get the search warrant, October 19, 2005, a judges conference was being held and that he could not find an available judge in Madison County (the county in which the city of Jackson is located). The officer testified that the closest judge he could find was in Henderson County (a neighboring county). In Henderson County, Mr. Dyer spoke with General Sessions Judge Steve Beal who told the officer that he could sign the warrant for him. Officer Dyer testified that as far as he knew, "a judge of general sessions would be an appropriate judge to sign [the] warrant."

As to the warrant, Mr. Dyer testified that on the signature line, Madison County was marked

out, as were the words "Circuit Court" before the word "Judge." The judge replaced the crossed out words with "General Sessions" and "Henderson." The officer noted that the judge also wrote in "Judges outside of jurisdiction by interchange."[1] On the witness stand, Mr. Dyer testified that he did not know of any agreement between the Henderson County judge and a Madison County judge in which Judge Beal would stand in for search warrant applications. In addition, a clerk from the Madison County clerk's office testified that there were no out-of-county judges sitting by interchange on October 19th, and that there was nothing in the clerk's office related to a search warrant naming Daniel Franklin.

After testimony was had, defense counsel closed by arguing that, although Tennessee law allows interchange between general sessions court judges, there is no proof that Judge Beal had an agreement with the Madison county judges to sit by interchange. In addition, even if there were an agreement, defense counsel argued that Tennessee law does not allow a judge to issue a warrant unless he is physically in the county in which it is to be executed. In response, the government argued that the authority of the judge is not dependent on where he is physically, that the judge was legally authorized by interchange to act for another judge, and that there is no law requiring the signing judge to have the other judge's permission to sign the warrant.

After taking the issue under advisement, the district court judge issued an order in which it held that, in the absence of any evidence to the contrary, Judge Beal was sitting by interchange when

---

[1]Appellant claims that Tennessee law allows a judge to sit by "interchange" in an outside jurisdiction. When sitting by "interchange," Appellant argues, the guest judge has the same authority as the judges from the outside jurisdiction. The procedure for "interchanging," however, is not clearly defined in Tennessee law.

he signed the search warrant, and thus had the authority to issue the warrant. In addition, the court found that because Judge Beal had jurisdiction in Madison County pursuant to an interchange, the fact that Judge Beal signed the warrant while he was present in Henderson County did not invalidate the warrant. After the district court denied Mr. Franklin's motion to suppress and motion for reconsideration, he entered a conditional guilty plea to counts 1 and 3 of the indictment. On November 15, 2006, the district court sentenced the defendant to 48 months of imprisonment followed by 2 years of supervised release. Defendant now appeals the district court's denial of his motion to suppress.

## II. STANDARD OF REVIEW

When reviewing a district court's denial of a motion to suppress evidence, the district court's factual findings are examined for clear error, and its conclusions of law are subject to de novo review. *United States v. Jenkins*, 124 F.3d 768, 771-72 (6th Cir. 1997). The evidence is reviewed in the light most favorable to the district court's conclusions. *Id*. at 772.

## III. ANALYSIS

### A. The Validity of the Warrant

Here, Appellant argues that the Henderson County general sessions court judge who signed the search warrant for a residence located in Madison County did so without proper legal authority. Consequently, Appellant claims, the warrant issued was invalid and all evidence obtained pursuant to the warrant should be suppressed. Appellant alleges that the Henderson County judge lacked

authority to grant the warrant because he did not follow the state's "interchange" procedure. He contends that Tennessee law does not allow a general sessions judge to grant a search warrant for a residence outside the county in which he/she resides, unless the judge "interchanges" with a judge from the county where the warrant is to be executed. The procedure for interchanging, however, is not clearly defined, as there is no state statute detailing the process.[2] It is therefore unclear whether the Henderson County judge followed the applicable state procedure for issuing the warrant in question. Nevertheless, whether the Henderson County judge followed Tennessee's interchange policy is irrelevant because Appellant-Defendant was tried in federal court. In federal court, when the Exclusionary Rule is at issue, the only applicable law is the Federal Constitution. Since the warrant here was granted in compliance with the requirements of the Fourth Amendment, we hold that the warrant was valid. Therefore, the district court was correct to deny Appellant's motion to suppress evidence.

The question of whether evidence obtained in violation of state law can be admitted in federal court has been addressed by this court in several cases, perhaps most clearly in *United States v. Allen*, 954 F.2d 1160 (6th Cir. 1992). In *Allen*, four individuals were indicted for conspiring to manufacture marijuana. *Id*. at 1164-65. Before their trial, the defendants submitted a motion to suppress evidence obtained from a warrantless search of one of the defendant's property. *Id*. at 1165. The defendants claimed, and it was found to be true, that a state agent entered the property of one

---

[2]Although Appellant claims that "Tennessee Code § 16-15-209(a) provides the specific procedure by which a general sessions or juvenile court judge may seek a 'special judge' to fill its place when necessary," it does not. (Appellant's brief 19.) Tennessee Code § 16-15-209(a) merely states that a judge *can* interchange with another judge, it does not explain how a judge is to conduct the interchange.

of the defendant's without a search warrant and seized a marijuana plant. The district court denied the defendants' motion, finding that the state agent did not violate the Fourth Amendment's search and seizure protections. *Id*. Subsequently, three of the defendants were convicted. *Id*. Two of the convicted defendants appealed their sentence, arguing that the district court erred in denying their motion to suppress because state law, rather than federal law, should have been applied to the search and seizure issue. *Id*. at 1166. The defendants argued that because it was the state's investigation that led to the improper seizure, in the interest of comity, the state's more stringent exclusionary rule should have been applied. *Id*. at 1166. Specifically, the defendants noted the issue as "whether information secured by officers of . . . Tennessee entirely, without federal involvement, should be admissible in a federal prosecution notwithstanding violations of state law." *Id*. at 1166 (internal citations omitted). We held that "[t]he state may reserve certain rights including a stricter standard of search and seizure law; however, such a standard does not have to be applied in federal court." *Id*. at 1168. Thus, we concluded, the district court did not err in only applying federal law. *Id*.

Two years after our decision in *Allen*, we again faced the issue of whether state search and seizure laws should be applied in federal court. In *United States v. Wright*, 16 F.3d 1429, 1434 (6th Cir. 1994), the defendant was convicted of various counts relating to the selling of cocaine. Local authorities arrested the defendant without a warrant in a parking lot after being tipped off about his criminal activities by an informant. *Id*. at 1431-32. In arresting the defendant, the authorities searched his car and found bags filled with cocaine *Id*. at 1432. Before trial, the defendant filed a motion to suppress, arguing that the district court was required to apply Tennessee law in determining the legality of the search and seizure. *Id*. at 1433. The district court denied the

defendant's motion, holding that state search and seizure doctrines are inapplicable in federal court.

*Id*. Subsequently, the defendant was convicted. On appeal, the defendant argued that the evidence seized from his warrantless arrest and subsequent search should have been suppressed because under Tennessee law, which poses a stricter standard for warrantless arrests, searches, and seizures than corresponding federal law, the police officers did not have probable cause for the arrest or the search. *Id*. at 1433. We upheld the district court's ruling, finding that "[t]he fact that Tennessee law 'may now require greater protection against search and seizures than the fourteenth amendment is of no avail to a defendant in federal court, under prosecution for a federal crime.'" *Wright*, 16 F.3d at 1434 (quoting *United States v. Loggins*, 777 F.3d 336, 338 (6th Cir. 1985)). The violation of state search and seizure law, we held, "is irrelevant as long as the standards developed under the Federal Constitution [are] not offended." *Id*. at 1437.

The Supreme Court recently addressed the relevancy of state law in determining whether a defendant's Fourth Amendment rights have been violated in the case of *Virginia v. Moore*, 128 S. Ct. 1598 (2008). In *Moore*, two Portsmouth, Virginia police officers stopped David Moore in his car on suspicion that he was driving with a suspended license. *Id*. at 1601. The officers determined that Moore's license was indeed suspended, and arrested him for the misdemeanor of driving on a suspended license. *Id*. The officers then conducted a search pursuant to Moore's arrest and found that he was carrying 16 grams of crack cocaine and $516 in cash. *Id*. Moore was subsequently charged in state court with possessing cocaine with the intent to distribute. *Id*. at 1602. Moore then filed a motion to suppress, arguing that the officers' search incident to his arrest was improper. *Id*. The defendant claimed that under state law, the officers should have issued him a summons instead

of arresting him.[3] *Id*. Therefore, as his arrest was improper, the search pursuant to his arrest was invalid, and the evidence obtained from the search should be excluded. *Id*. Although the trial court denied Moore's motion and subsequently found him guilty of the drug charge, his conviction was eventually overturned by the Virginia Supreme Court. *Id*. The Virginia Supreme Court found that because the arresting officers should have issued Moore a citation under state law, and the Fourth Amendment does not permit a search incident to a citation, the arrest search violated the defendant's Fourth Amendment rights. *Id*.

On appeal to the United States Supreme Court, the Court reversed the state court's judgment. The Court held that "warrantless arrests for crimes committed in the presence of an arresting officer are reasonable under the Constitution, and that while States are free to regulate such arrests however they desire, state restrictions do not alter the Fourth Amendment's protections." *Id*. at 1607. The Court stated, "[a] State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional." *Id*. at 1606.

In the instant matter, the district court was correct to deny Defendant's motion to suppress because the evidence at issue was seized pursuant to a valid warrant. The constitutional test for the

---

[3]The Supreme Court noted that driving on a suspended license is not an arrestable offense in Virginia except as to those who "fail or refuse to discontinue" the violation, and those whom the officer reasonably believes to be likely to disregard a summons, or likely to harm themselves or others. Va.Code Ann. § 19.2-74 (Lexis 2004). In addition, Virginia permits arrest for driving on a suspended license in jurisdictions where "prior general approval has been granted by order of the general district court." Va.Code Ann. § 46.2-936. *See Moore*, 128 S.Ct. 1598, 1602 (2008).

issuance of a warrant is that it be issued by a neutral and detached magistrate.[4] *Johnson v. United States*, 333 U.S. 10, 14 (1948). Here, the judge who issued the warrant in question was a magistrate judge.[5] Moreover, there is nothing in the record to suggests, nor does Defendant claim, that the judge was not neutral and detached. As such, the warrant issued was valid, and Defendant's motion to suppress the evidence seized pursuant to the warrant must be denied. Although Defendant claims that the warrant was improper because the judge did not follow the applicable state procedure, as the aforementioned case law demonstrates, state law is irrelevant in federal court when the Exclusionary Rule is at issue. The only applicable law in the instant matter is the Federal Constitution, and its standards have clearly been met.

### B. The "Implicit Requirement"

Judge Clay's dissent suggests that in addition to the requirement that the warrant be issued by a neutral and detached magistrate, the Fourth Amendment implicitly requires that the warrant be issued by a magistrate acting within his jurisdiction as prescribed by state law. Although Judge Clay does not cite any Supreme Court cases that support the existence of this alleged requirement, he believes that this court's decision in *State v. Scott*, 260 F.3d 512 (6th Cir. 2001), offers some guidance on this issue.

In *Scott*, a local investigator had a retired judge sign a warrant to search a man's property

---

[4]The Constitution also requires that a warrant be based on probable cause. U.S. CONST. amend. IV. For our purposes, however, we are only concerned with the qualifications of the magistrate.

[5]In Tennessee, general sessions judges are magistrate judges. T.C.A. §40-5-102.

suspected of growing marijuana. *Id*. at 513-14. The man whose house was subsequently searched filed a motion to suppress the evidence obtained on the grounds that the judge who issued the warrant lacked the authority necessary to grant warrants. *Id*. at 514. His motion was denied and he appealed to our court. *Id*. We reversed the district court's denial of the motion to suppress, finding that because the judge in question was retired, he lacked the authority to grant warrants. *Id*. at 515. Consequently, we held, the search conducted pursuant to the warrant was improper and the items seized from the search should be suppressed. *Id*.

We do not find *Scott* applicable to our present case because here, the judge had the authority to grant warrants. As previously mentioned, the judge in the instant matter was a general sessions judge. In Tennessee, general sessions judges are magistrate judges who have the authority to issue warrants. T. C. A. §40-5-102. In *Scott*, however, the judge in question was no longer a judge, as he was retired. As a retired judge, he had no more authority to grant warrants than the average citizen. Although the facts indicate that he sometimes would act as a special judge when active judges were unavailable, and in so doing had the power to grant warrants, he was not acting as a special judge at the time he issued the warrant in question, and thus had no authority to grant warrants.

Unlike the former judge in *Scott*, the judge in the instant matter always maintained the power to grant warrants. His authority did not rely on the absence or presence of judges, and ceased only when he could no longer qualify as a magistrate judge. Although the judge here was allegedly required to fill out certain paperwork when issuing a warrant in an outside county,[6] his attentiveness

---

[6]As Judge Clay concedes in his dissent, it is not entirely clear from Tennessee statutes what exactly the procedure is for interchanging with a judge from a different county in order to be able to grant a warrant in that county. Nevertheless, Appellant's brief seems to suggest that

in following this procedure has no affect on the validity of the warrant in federal court.  In federal court, the Fourth Amendment governs the validity of warrants, and as the Supreme Court recently stated, "it is not the province of the Fourth Amendment to enforce state law." *Moore*, 128 S. Ct. at 1608.  As there is nothing in the record to indicate that the Henderson County Judge was not a neutral and detached magistrate, we find the search and seizure conducted pursuant to his warrant proper.

## IV.  CONCLUSION

For the aforementioned reasons, we **AFFIRM** the district court's order denying Defendant's motion to suppress evidence.

---

some paperwork is involved.  *See* T.C.A. § 17-2-208; *see generally* Appellant's brief.

**CLAY, Circuit Judge, dissenting.** Because I believe that the state court judge in this case was without jurisdiction to issue the search warrant and as a result the search conducted pursuant to the invalid warrant was unconstitutional, I respectfully dissent.

The record before the district court established that the search warrant for Defendant's Madison County residence was issued by a Henderson County general sessions judge who was without jurisdiction in Madison County. An out-of-county general sessions judge could lawfully issue such a warrant only if he were acting pursuant to an "interchange agreement" with a Madison County judge. The record shows that instead of an interchange taking place between two judges, as contemplated by Tennessee statute, a Madison County police officer initiated the interchange by seeking a search warrant from an out-of-county judge without the involvement of a Madison County judicial officer. The Madison County court clerk had no record of an interchange agreement between a Henderson County judge and a Madison County judge for the date the search warrant was issued. She also had no record of the search warrant authorizing the search of Defendant's residence. In fact, the search warrant was returned to the Henderson County general sessions court after the warrant was executed. Thus, the evidence before the district court indicated that no oral or written interchange agreement existed, and the district court's finding to the contrary was clearly erroneous.

Furthermore, the search of Defendant's residence pursuant to a warrant issued by a judge without lawful authority was violative of the United States Constitution. Implicit in the Fourth Amendment's requirement that a search warrant must be issued by a detached and neutral magistrate is the requirement that the issuing officer must act within the scope of the authority

delegated to him. Because the Henderson County general sessions judge was acting outside of

the scope of his authority, the district court erred in denying Defendant's motion to suppress.

## BACKGROUND

On October 19, 2005, after being told by a confidential informant that Daniel Jon

Franklin was a felon in possession of handguns and drugs, Jackson Police Department officer

Terry Dyer attempted to secure a search warrant for Franklin's residence. Franklin resided in

Jackson, Tennessee, which is the county seat of Madison County. Dyer, who wanted to bring a

case against Franklin in federal court, attempted to contact judges of courts of record in Madison

County. However, Dyer was unsuccessful in doing so because the judges were away at a judicial

conference. Dyer asked Police Chief Rick Staples what he should do about getting a search

warrant. Staples recommended that Dyer look for a judge in another jurisdiction. As a result,

Dyer called Henderson County general sessions judge Steve Beal. Judge Beal asked Dyer to

come to his office in Henderson County so that he could issue the warrant. Dyer traveled to

Henderson county, as requested, where Judge Beal reviewed the search warrant application and

inquired about the reliability of Dyer's confidential informant before issuing a search warrant for

Franklin's residence. On the search warrant Judge Beal crossed out "Madison County" and

handwrote "Judges outside of jurisdiction by interchange."

Jackson police officers subsequently conducted a search of Franklin's residence pursuant

to the warrant issued by Judge Beal. The search uncovered two semi-automatic pistols and

ammunition, and as a result Franklin was arrested. On December 19, 2005, in United States

District Court for the Western District of Tennessee, Franklin was charged in a two-count

indictment for being a felon in possession of firearms and a felon in possession of ammunition,

both in violation of 18 U.S.C. § 922(g). On May 16, 2006, the defense filed a motion to suppress

the fruits of the search of Franklin's residence, claiming that inaccuracies in the search warrant

rendered it invalid, that there was insufficient evidence for a judge to find probable cause because

the prosecution had not produced any affidavit accompanying the search warrant, and that police

officers failed to knock and announce their presence before entering Franklin's home. On May

23, 2006, the defense filed a supplement to its motion to suppress arguing that the fruits of the

search of Franklin's residence must be suppressed because a Henderson County general sessions

judge without jurisdiction in Madison County had signed the warrant.

On July 17, 2006, the district court held a hearing regarding the motion to suppress. At

the hearing the defense acknowledged that it had received the affidavit supporting the search

warrant during discovery. Officer Dyer testified regarding his efforts to find a judge in Madison

County. Dyer also testified that the warrant was returned to the Henderson County general

sessions court because Dyer was required to return the warrant to the issuing judge. With respect

to the search of Franklin's residence, Dyer testified that the officers knocked and announced their

presence before entering the residence. Dyer had no knowledge of an interchange agreement

between Judge Beal and the Madison County general sessions judge. The clerk of the Madison

County general sessions court testified that she had no knowledge of an interchange agreement

between the Henderson County general sessions judge and the Madison County general sessions

judge on the day the search warrant was issued. The clerk further testified that there was no

record of the search warrant for Franklin's residence in the files and records of the Madison

County general sessions court.

On July 25, 2006, the district court denied Franklin's motion to suppress evidence. The court found that minor inaccuracies in the warrant were insufficient to render it invalid, that police officers did not violate the knock and announce rule, and that the judge who issued the search warrant was authorized to do so. The district court noted that the question of whether the warrant was valid despite the fact that a Henderson County judge had signed it was complex due to the lack of case law on the issue; however, the district court agreed with Franklin that a general sessions judge only has authority to issue a search warrant in the county in which he sits. Ultimately, the district court upheld the validity of the search warrant, finding that Judge Beal had jurisdiction to issue the search warrant because he was sitting pursuant to a valid interchange agreement when he signed the warrant.

In response to the district court's ruling, defense counsel filed a motion to reopen the proof and for reconsideration of the district court's denial of Franklin's motion to suppress on July 25, 2006. Defense counsel asked for the opportunity to present more proof regarding interchange agreements under Tennessee law. The district court allowed the defense time to supplement the record. On August 18, 2006, Franklin filed a conditional guilty plea, reserving the right to challenge the district court's ruling on his motion to suppress. On August 31, 2006, the defense filed a memorandum in support of its motion to reconsider. The defense argued that there was no evidence of a mutual interchange and that an interchange agreement for the purpose of issuing a warrant is impossible. The defense also presented an offer of proof in a supplement to its memorandum which stated that if given the opportunity it could present the testimony of

Judge Hugh Harvey, the general sessions judge for Madison County, to the effect that there was no interchange agreement for the date the search warrant was issued. On September 11, 2006, the district court denied Franklin's motion to reconsider for the same reasons stated in its original decision. The district court engaged in conjecture by speculating that even if Judge Beal did not have an interchange agreement with Judge Harvey, Judge Beal may have had an interchange agreement with another Madison County judge.

On November 15, 2006, Franklin was sentenced to 48 months imprisonment on each count of the indictment with the sentences to run concurrently. Franklin filed a timely notice of appeal on November 21, 2006.

**DISCUSSION**

Defendant argues on appeal that the district court erred in denying his motion to suppress. This Court reviews a district court's legal conclusions regarding a motion to suppress *de novo* while reviewing the district court's factual findings for clear error. *United States v. Lewis*, 231 F.3d 238, 241 (6th Cir. 2000). In order to prevail on a motion to suppress evidence seized pursuant to a search warrant, the movant has the burden of making a prima facie case that the search was illegal. *United States v. Murrie*, 534 F.2d 695, 697-98 (6th Cir. 1976). Once this prima facie case has been made, the burden shifts to the government to defend the legality of the search. *Id.* at 698; *United States v. Thompson*, 409 F.2d 113, 117 (6th Cir. 1969); Wright, Federal Practice & Procedure, § 675. The government must prove the legality of the search by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986).

Defendant claims the evidence gathered as a result of the search of his residence should

have been suppressed by the district court because the warrant pursuant to which his house was searched was issued by a judge without statutory authority to do so. In order to determine whether Defendant's motion to suppress was erroneously denied, this Court must examine: (1) whether the issuing judge had authority to do so under state law; and (2) in the absence of such statutory authority, the effect of the judge's issuance of a search warrant on the admissibility of evidence gathered pursuant to the warrant in a federal prosecution.

## I.

As previously indicated, the warrant authorizing the search of Defendant's residence was issued by a Henderson County, Tennessee general sessions judge while the property to be searched was in Madison County, Tennessee. Tennessee law permits such extraterritorial action only in limited situations, as discussed below.

The first general sessions courts were created by individual counties through private acts of the legislature in the mid-1900s. In 1959 the state legislature created general sessions courts throughout the state to replace the local justices of the peace. E. Michael Ellis, *The Jurisdiction of General Sessions Courts in Tennessee to Try and Determine Criminal Cases*, 36 Tenn. L. Rev. 458, 458-60 (1969). Like their predecessors, the justices of the peace, general sessions courts have limited subject matter and territorial jurisdiction. Tenn. Code Ann. § 16-1-501(a) ("The court of general sessions is vested with all of the jurisdiction and shall exercise the authority formerly conferred by law upon justices of the peace in civil and criminal cases, suits and actions. The jurisdiction, power and authority of the court shall be coextensive with the county."). These courts "touch elbows with the ordinary people and provide justice in the small

everyday affairs of life." *Ware v. Meharry Medical College*, 898 S.W.2d 181 (Tenn. 1995) (quoting Robert S. Keebler, *Our Justice of the Peace Courts - A Problem in Justice*, 9 Tenn. L. Rev. 1, 4-5 (1930)) (internal quotation marks omitted). General sessions courts may adjudicate some misdemeanor offenses for which trial by jury is waived and civil cases in which the amount in controversy is less than $25,000. Tenn. Code Ann. § 16-15-501(d)(1). In some counties general sessions courts have jurisdiction over juvenile, divorce, domestic relations, and workers' compensation cases. Tenn. Code Ann. §§ 16-15-501(b) and 37-1-203. By statute, general sessions judges have the authority to issue search warrants. Tenn. Code Ann. § 40-5-102; Tenn. Code Ann. § 40-6-105; *State v. Smith*, 867 S.W.2d 343, 349 (Tenn. Crim. App. 1993) ("In order to be valid, a search warrant must be issued by a magistrate. A general sessions judge qualifies as a magistrate and is authorized to issue search warrants.") (internal citations omitted).

Although the general sessions courts are inferior state courts, the territorial jurisdiction of a general sessions court remains limited to the county in which the court sits. Tenn. Code Ann. § 16-15-503 ("The jurisdiction of general sessions courts, when not otherwise provided, is geographically coextensive with the limits of their respective counties."). The Tennessee Supreme Court has repeatedly reaffirmed the local nature of general sessions courts. *State v. Morrow*, 75 S.W.3d 919, 922 (Tenn. 2002) ("A court of general sessions is a county court." (citing *State ex rel. Winstead v. Moody*, 596 S.W.2d 811 (Tenn.1980))); *Spurlock v. Sumner County*, 42 S.W.3d 75, 81 (Tenn. 2001) (noting that the office of general sessions judge is a county office); *Durham v. Dismukes*, 333 S.W.2d 935, 939 (Tenn. 1960) ("It has been the accepted feeling among the Bar down through the years that even though these different county

judges and inferior courts that operate in counties are given jurisdiction over certain State

matters, that unless the Legislature has determined to make them a State court they still, under

the Act creating them, are primarily a local court, the need for which is largely left to a vote of

the people in the local county."). *See also Tucker v. Tennessee*, 2005 WL 1922561, at *1-2

(W.D. Tenn. 2005). This general limit on the general sessions judge's territorial jurisdiction

includes the limitation of a general sessions judge's authority to issue search warrants to warrants

concerning property within the judge's county. Tenn. R. Crim. P. Rule 41(a) ("A magistrate with

jurisdiction in the county where the property sought is located may issue a search warrant

authorized by this rule.").

As an exception to the rule that general sessions judges only have authority in their home

counties, Tennessee law allows a general sessions judge to sit outside of the judge's county

pursuant to an interchange agreement with another general sessions judge. Section 17-2-208 of

the Tennessee Code governs interchange of general sessions judges. This section provides:

> Notwithstanding any other provision of the law to the contrary, judges of courts of
> general sessions and juvenile courts may interchange with each other whenever
> causes exist making an interchange necessary or for mutual convenience. The
> interchanging judge shall not be required to be a resident of the county of the
> judge for whom such judge is sitting, but must otherwise possess the same
> qualifications as such judge.

Tenn. Code Ann. § 17-2-208. The statute sets forth no formal procedures to accomplish

interchange; however, the language of this provision makes clear that the interchange process is

not one-sided but instead must occur pursuant to an agreement between judges. When sitting by

interchange, the out-of-county judge is vested with the full authority of the judge for whom he or

she is substituting. Tenn. Code Ann. § 17-2-206. As a result, an out-of-county judge may issue search warrants for property located in the county in which the judge temporarily sits. *See Smith*, 867 S.W.2d at 349.

At issue in the instant case is whether Judge Beal, a Henderson County general sessions judge, had jurisdiction to issue a search warrant for a Madison County residence. At the suppression hearing, Terry Dyer, the officer who executed the search warrant testified that after being unable to find a Madison County judge, he sought out Judge Beal, a Henderson County general sessions judge, who signed the warrant. Dyer testified that the warrant was returned to Henderson County after it was executed. The clerk of Madison County general sessions court testified that she had no knowledge of a judge sitting by interchange on the day the warrant was issued. She further testified that Madison County had no record of the warrant. In light of the facts presented at the suppression hearing, Defendant made a prima facie case that the search warrant was issued by Judge Beal in his capacity as a Henderson County general sessions judge, acting without lawful authority, inasmuch as he was not acting pursuant to an interchange agreement between two judges.

The only evidence the government presented to rebut Defendant's claim was the fact that next to his signature on the warrant, Judge Beal wrote: "Judges outside of jurisdiction by interchange." The fact that Judge Beal represented that he was authorized to issue the search warrant by Tennessee law regarding interchange does not negate the weight of contrary evidence indicating that no interchange agreement existed under the circumstances of this case. Due to the government's failure to rebut Defendant's prima facie case, the district court's finding that Judge

Beal was sitting by interchange when he signed the search warrant was clearly erroneous.

## II.

The government argues that suppression is not warranted in the instant case because state law is irrelevant to the Fourth Amendment analysis. The Supreme Court recently discussed the role of state law in determining the constitutionality of searches and seizures in *Virginia v. Moore*, 128 S. Ct. 1598, 1606 (2008). In *Moore* the Supreme Court determined that the arrest and search of a woman stopped for driving with a suspended license did not violate the Constitution despite the state law providing that, under the particular circumstances, the officers should have issued a summons rather than make an arrest. The Court reasoned that constitutionalizing state law standards for the legality of arrests would make the protections of the Fourth Amendment vary from state to state. *Id.* at 1607. However, *Moore* cannot be read to counsel willful blindness to all aspects of state law when courts are faced with Fourth Amendment challenges. *Moore* stands for the more limited principle that the Fourth Amendment is not violated when officials fail to comply with state law limitations on search and seizure that are more restrictive than constitutional standards. *Moore*, 128 S. Ct. at 1606 ("A State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional."). The cases relied upon by the majority come to the same conclusion. *United States v. Wright*, 16 F.3d 1429, 1437 (6th Cir. 1994) ("The fact that the arrest, search, or seizure may have violated state law is irrelevant as long as the standards developed under the Federal Constitution were not offended."); *United States v. Allen*, 954 F.2d 1160, 1168 (6th Cir.

1992) ("The state may reserve certain rights including a stricter standard of search and seizure law; however, such a standard does not have to be applied in federal court.").

The instant case is readily distinguishable from *Moore* in that instead of adding to the Fourth Amendment's requirements, reference to state law is needed to give content to the Fourth Amendment's guarantees. The Fourth Amendment requires that a warrant for a search or arrest be issued by a neutral and detached magistrate. *Shadwick v. City of Tampa*, 407 U.S. 345 (1972). As the Supreme Court has recognized, "[h]istorically, a magistrate has been defined broadly as 'a public civil officer, possessing such power-legislative, executive, or judicial-as the government appointing him may ordain' or, in a narrower sense 'an inferior judicial officer, such as a justice of the peace.'" *Id.* at 349 (quoting *Compton v. Alabama*, 214 U.S. 1, 7 (1909)). The government need not delegate this power only to lawyers or judges as long as designated magistrates are neutral and detached from law enforcement and have the ability to determine whether probable cause exists for the issuance of the warrant. *Id.* at 350. The *Shadwick* court made clear that the designation of magistrates is largely left to the states. *Id*. at 354 ("States are entitled to some flexibility and leeway in their designation of magistrates . . ."). Because state law determines who qualifies as a magistrate, an examination of whether a warrant was issued in compliance with the Fourth Amendment necessitates an examination of state law. This situation is unlike that prohibited by *Moore*, which examined whether officers complied with the state's restrictions on arrest, but is instead comparable to looking to the state law definition of a crime in order to determine whether probable cause existed. *See, e.g., Maryland v. Pringle*, 540 U.S. 366, 369-70 (2003).

In *State v. Scott*, 260 F.3d 512 (6th Cir. 2001), this Court considered whether the Fourth Amendment is violated when a warrant is issued by a person acting without lawful authority. In *Scott* a retired general sessions judge signed a search warrant. Despite the fact that the issuing judge sometimes substituted for active judges, we found that he was not doing so at the time the warrant was signed and thus lacked legal authority to sign a warrant. *Scott*, 260 F.3d at 515. We reasoned that this lack of authority went to the heart of the Fourth Amendment requirement "that the warrant be issued by a neutral and detached judicial officer." *Id.* As a result, we concluded that the evidence procured as a result of the search should have been suppressed and that the good faith exception to the exclusionary rule established in *United States v. Leon*, 468 U.S. 897 (1984), did not apply because the warrant was void *ab initio*. *Scott*, 260 F.3d at 515.

The government attempts to distinguish *Scott* from the case at hand by arguing that the holding in *Scott* dealt with an individual who lacked legal authority to issue any warrants. (Gov't Br. at 8.) This contention is a mischaracterization of the case. In *Scott*, the judge who issued the warrant would sometimes act as a special judge replacing active judges when they were unavailable. *Scott*, 260 F.3d at 515. When properly acting in that capacity, the issuing judge had the authority to issue a warrant, *State v. Smith*, 867 S.W.2d 343, 349 (Tenn. Crim. App. 1993); however, at the time the warrant in *Scott* was issued he was not acting in the legal capacity necessary to be authorized to issue warrants. *Scott*, 260 F.3d at 515. The situation in *Scott* is quite similar to a case in which a judge is acting outside his jurisdiction; such a judge has authority to issue search warrants in some locations but warrants issued for locations in which he has no authority are invalid from their inception. *See United States v. Durham*, 148 F. App'x.

320, 323-25 (6th Cir. 2005) (unpublished) (examining the authority of a Kentucky trial commissioner to act outside of his county of appointment in issuing a search warrant, and concluding that the search warrant was valid because the trial commissioner had valid temporary appointment to the county in which the search warrant was executed); *United States v. Bennett*, 170 F.3d 632, 635 -36 (6th Cir. 1999) (determining that a search warrant issued by a court clerk was valid where state law prerequisites for the clerk to have authority to issue search warrants were fulfilled). *See generally United States v. Strother*, 578 F.2d 397, 399 (D.C. Cir. 1978) (citing "[t]he general principle that a judicial officer's writ cannot run outside her territorial jurisdiction"). Adopting the government's point of view would lead to the absurd result that being a judicial officer somewhere would allow one to issue a search warrant everywhere. The powers of local judicial officers have territorial limits, and this Court must look to state law to determine the extent of an officer's judicial power. *See also United States v. Neering*, 194 F. Supp. 2d 620 (E.D. Mich. 2002) (holding that a deputy magistrate who was not lawfully appointed lacked authority to issue warrants and that the search warrant was void as a matter of law); *Bosteder v. City of Renton*, 117 P.3d 316, 324 (Wash. 2005) (citing *Scott* in holding that an administrative search warrant was void when it was issued by a state court judge with authority to issue criminal search warrants but not administrative search warrants). Thus, Sixth Circuit precedent requires the suppression of evidence gathered pursuant to a warrant issued by an official acting outside of his jurisdiction.

## CONCLUSION

Because the judge issuing the search warrant for Defendant's residence acted without legal authority, the district court's order denying Defendant's motion to suppress the evidence gathered as a result of the search of his residence should be reversed.