CLAY, Circuit Judge,
dissenting.
Because I believe that the state court judge in this case was without jurisdiction to issue the search warrant and as a result the search conducted pursuant to the invalid warrant was unconstitutional, I respectfully dissent.
The record before the district court established that the search warrant for Defendant’s Madison County residence was issued by a Henderson County general sessions judge who was without jurisdiction in Madison County. An out-of-county *273 general sessions judge could lawfully issue such a warrant only if he were acting pursuant to an “interchange agreement” with a Madison County judge. The record shows that instead of an interchange taking place between two judges, as contemplated by Tennessee statute, a Madison County police officer initiated the interchange by seeking a search warrant from an out-of-county judge without the involvement of a Madison County judicial officer. The Madison County court clerk had no record of an interchange agreement between a Henderson County judge and a Madison County judge for the date the search warrant was issued. She also had no record of the search warrant authorizing the search of Defendant’s residence. In fact, the search warrant was returned to the Henderson County general sessions court after the warrant was executed. Thus, the evidence before the district court indicated that no oral or written interchange agreement existed, and the district court’s finding to the contrary was clearly erroneous.
Furthermore, the search of Defendant’s residence pursuant to a warrant issued by a judge without lawful authority was violative of the United States Constitution. Implicit in the Fourth Amendment’s requirement that a search warrant must be issued by a detached and neutral magistrate is the requirement that the issuing officer must act within the scope of the authority delegated to him. Because the Henderson County general sessions judge was acting outside of the scope of his authority, the district court erred in denying Defendant’s motion to suppress.
BACKGROUND
On October 19, 2005, after being told by a confidential informant that Daniel Jon Franklin was a felon in possession of handguns and drugs, Jackson Police Department officer Terry Dyer attempted to secure a search warrant for Franklin’s residence. Franklin resided in Jackson, Tennessee, which is the county seat of Madison County. Dyer, who wanted to bring a case against Franklin in federal court, attempted to contact judges of courts of record in Madison County. However, Dyer was unsuccessful in doing so because the judges were away at a judicial conference. Dyer asked Police Chief Rick Staples what he should do about getting a search warrant. Staples recommended that Dyer look for a judge in another jurisdiction. As a result, Dyer called Henderson County general sessions judge Steve Beal. Judge Beal asked Dyer to come to his office in Henderson County so that he could issue the warrant. Dyer traveled to Henderson county, as requested, where Judge Beal reviewed the search warrant application and inquired about the reliability of Dyer’s confidential informant before issuing a search warrant for Franklin’s residence. On the search warrant Judge Beal crossed out “Madison County” and handwrote “Judges outside of jurisdiction by interchange.”
Jackson police officers subsequently conducted a search of Franklin’s residence pursuant to the warrant issued by Judge Beal. The search uncovered two semiautomatic pistols and ammunition, and as a result Franklin was arrested. On December 19, 2005, in United States District Court for the Western District of Tennessee, Franklin was charged in a two-count indictment for being a felon in possession of firearms and a felon in possession of ammunition, both in violation of 18 U.S.C. § 922(g). On May 16, 2006, the defense filed a motion to suppress the fruits of the search of Franklin’s residence, claiming that inaccuracies in the search warrant rendered it invalid, that there was insufficient evidence for a judge to find probable *274 cause because the prosecution had not produced any affidavit accompanying the search warrant, and that police officers failed to knock and announce their presence before entering Franklin’s home. On May 23, 2006, the defense filed a supplement to its motion to suppress arguing that the fruits of the search of Franklin’s residence must be suppressed because a Henderson County general sessions judge without jurisdiction in Madison County had signed the warrant.
On July 17, 2006, the district court held a hearing regarding the motion to suppress. At the hearing the defense acknowledged that it had received the affidavit supporting the search warrant during discovery. Officer Dyer testified regarding his efforts to find a judge in Madison County. Dyer also testified that the warrant was returned to the Henderson County general sessions court because Dyer was required to return the warrant to the issuing judge. With respect to the search of Franklin’s residence, Dyer testified that the officers knocked and announced their presence before entering the residence. Dyer had no knowledge of an interchange agreement between Judge Beal and the Madison County general sessions judge. The clerk of the Madison County general sessions court testified that she had no knowledge of an interchange agreement between the Henderson County general sessions judge and the Madison County general sessions judge on the day the search warrant was issued. The clerk further testified that there was no record of the search warrant for Franklin’s residence in the files and records of the Madison County general sessions court.
On July 25, 2006, the district court denied Franklin’s motion to suppress evidence. The court found that minor inaccuracies in the warrant were insufficient to render it invalid, that police officers did not violate the knock and announce rule, and that the judge who issued the search warrant was authorized to do so. The district court noted that the question of whether the warrant was valid despite the fact that a Henderson County judge had signed it was complex due to the lack of case law on the issue; however, the district court agreed with Franklin that a general sessions judge only has authority to issue a search warrant in the county in which he sits. Ultimately, the district court upheld the validity of the search warrant, finding that Judge Beal had jurisdiction to issue the search warrant because he was sitting pursuant to a valid interchange agreement when he signed the warrant.
In response to the district court’s ruling, defense counsel filed a motion to reopen the proof and for reconsideration of the district court’s denial of Franklin’s motion to suppress on July 25, 2006. Defense counsel asked for the opportunity to present more proof regarding interchange agreements under Tennessee law. The district court allowed the defense time to supplement the record. On August 18, 2006, Franklin filed a conditional guilty plea, reserving the right to challenge the district court’s ruling on his motion to suppress. On August 31, 2006, the defense filed a memorandum in support of its motion to reconsider. The defense argued that there was no evidence of a mutual interchange and that an interchange agreement for the purpose of issuing a warrant is impossible. The defense also presented an offer of proof in a supplement to its memorandum which stated that if given the opportunity it could present the testimony of Judge Hugh Harvey, the general sessions judge for Madison County, to the effect that there was no interchange agreement for the date the search warrant was issued. On September 11, 2006, the district court denied Franklin’s *275 motion to reconsider for the same reasons stated in its original decision. The district court engaged in conjecture by speculating that even if Judge Beal did not have an interchange agreement with Judge Harvey, Judge Beal may have had an interchange agreement with another Madison County judge.
On November 15, 2006, Franklin was sentenced to 48 months imprisonment on each count of the indictment with the sentences to run concurrently. Franklin filed a timely notice of appeal on November 21, 2006.
DISCUSSION
Defendant argues on appeal that the district court erred in denying his motion to suppress. This Court reviews a district court’s legal conclusions regarding a motion to suppress de novo while reviewing the district court’s factual findings for clear error. United States v. Lewis, 231 F.3d 238, 241 (6th Cir.2000). In order to prevail on a motion to suppress evidence seized pursuant to a search warrant, the movant has the burden of making a prima facie case that the search was illegal. United States v. Murrie, 534 F.2d 695, 697-98 (6th Cir.1976). Once this prima facie case has been made, the burden shifts to the government to defend the legality of the search. Id. at 698; United States v. Thompson, 409 F.2d 113, 117 (6th Cir.1969); Wright, Federal Practice & Procedure, § 675. The government must prove the legality of the search by a preponderance of the evidence. Colorado v. Connelly, 479 U.S. 157, 168, 107 S.Ct. 515, 93 L.Ed.2d 473 (1986).
Defendant claims the evidence gathered as a result of the search of his residence should have been suppressed by the district court because the warrant pursuant to which his house was searched was issued by a judge without statutory authority to do so. In order to determine whether Defendant’s motion to suppress was erroneously denied, this Court must examine: (1) whether the issuing judge had authority to do so under state law; and (2) in the absence of such statutory authority, the effect of the judge’s issuance of a search warrant on the admissibility of evidence gathered pursuant to the warrant in a federal prosecution.
I.
As previously indicated, the warrant authorizing the search of Defendant’s residence was issued by a Henderson County, Tennessee general sessions judge while the property to be searched was in Madison County, Tennessee. Tennessee law permits such extraterritorial action only in limited situations, as discussed below.
The first general sessions courts were created by individual counties through private acts of the legislature in the mid-1900s. In 1959 the state legislature created general sessions courts throughout the state to replace the local justices of the peace. E. Michael Ellis, The Jurisdiction of General Sessions Courts in Tennessee to Try and Determine Criminal Cases, 36 Tenn. L.Rev. 458, 458-60 (1969). Like their predecessors, the justices of the peace, general sessions courts have limited subject matter and territorial jurisdiction. Tenn.Code Ann. § 16-15-501(a) (“The court of general sessions is vested with all of the jurisdiction and shall exercise the authority formerly conferred by law upon justices of the peace in civil and criminal cases, suits and actions. The jurisdiction, power and authority of the court shall be coextensive with the county.”). These courts “touch elbows with the ordinary people and provide justice in the small everyday affairs of life.” Ware v. Meharry Medical College, 898 S.W.2d 181 (Tenn. 1995) (quoting Robert S. Keebler, Our *276 Justice of the Peace Courts—A Problem in Justice, 9 Tenn. L.Rev. 1, 4-5 (1930)) (internal quotation marks omitted). General sessions courts may adjudicate some misdemeanor offenses for which trial by jury is waived and civil cases in which the amount in controversy is less than $25,000. Tenn.Code Ann. § 16—15—501(d)(1). In some counties general sessions courts have jurisdiction over juvenile, divorce, domestic relations, and workers’ compensation cases. Tenn.Code Ann. §§ 16-15-501(b) and 37-1-203. By statute, general sessions judges have the authority to issue search warrants. Tenn.Code Ann. § 40-5-102; Tenn.Code Ann. § 40-6-105; State v. Smith, 867 S.W.2d 343, 349 (Tenn.Crim. App.1993) (“In order to be valid, a search warrant must be issued by a magistrate. A general sessions judge qualifies as a magistrate and is authorized to issue search warrants.”) (internal citations omitted).
Although the general sessions courts are inferior state courts, the territorial jurisdiction of a general sessions court remains limited to the county in which the court sits. Tenn.Code Ann. § 16-15-503 (“The jurisdiction of general sessions courts, when not otherwise provided, is geographically coextensive with the limits of their respective counties.”). The Tennessee Supreme Court has repeatedly reaffirmed the local nature of general sessions courts. State v. Morrow, 75 S.W.3d 919, 922 (Tenn.2002) (“A court of general sessions is a county court.” (citing State ex rel. Winstead v. Moody, 596 S.W.2d 811 (Tenn. 1980))); Spurlock v. Sumner County, 42 S.W.3d 75, 81 (Tenn.2001) (noting that the office of general sessions judge is a county office); Durham v. Dismukes, 206 Tenn. 448, 333 S.W.2d 935, 939 (1960) (“It has been the accepted feeling among the Bar down through the years that even though these different county judges and inferior courts that operate in counties are given jurisdiction over certain State matters, that unless the Legislature has determined to make them a State court they still, under the Act creating them, are primarily a local court, the need for which is largely left to a vote of the people in the local county.”). See also Tucker v. Tennessee, 2005 WL 1922561, at *1-2 (W.D.Tenn. 2005). This general limit on the general sessions judge’s territorial jurisdiction includes the limitation of a general sessions judge’s authority to issue search warrants to warrants concerning property within the judge’s county. Tenn. R.Crim. P. Rule 41(a) (“A magistrate with jurisdiction in the county where the property sought is located may issue a search warrant authorized by this rule.”).
As an exception to the rule that general sessions judges only have authority in their home counties, Tennessee law allows a general sessions judge to sit outside of the judge’s county pursuant to an interchange agreement with another general sessions judge. Section 17-2-208 of the Tennessee Code governs interchange of general sessions judges. This section provides:
Notwithstanding any other provision of the law to the contrary, judges of courts of general sessions and juvenile courts may interchange with each other whenever causes exist making an interchange necessary or for mutual convenience. The interchanging judge shall not be required to be a resident of the county of the judge for whom such judge is sitting, but must otherwise possess the same qualifications as such judge.
Tenn.Code Ann. § 17-2-208. The statute sets forth no formal procedures to accomplish interchange; however, the language of this provision makes clear that the interchange process is not one-sided but instead must occur pursuant to an agreement between judges. When sitting by *277 interchange, the out-of-county judge is vested with the full authority of the judge for whom he or she is substituting. Tenn. Code Ann. § 17-2-206. As a result, an out-of-county judge may issue search warrants for property located in the county in which the judge temporarily sits. See Smith, 867 S.W.2d at 349.
At issue in the instant case is whether Judge Beal, a Henderson County general sessions judge, had jurisdiction to issue a search warrant for a Madison County residence. At the suppression hearing, Terry Dyer, the officer who executed the search warrant testified that after being unable to find a Madison County judge, he sought out Judge Beal, a Henderson County general sessions judge, who signed the warrant. Dyer testified that the warrant was returned to Henderson County after it was executed. The clerk of Madison County general sessions court testified that she had no knowledge of a judge sitting by interchange on the day the warrant was issued. She further testified that Madison County had no record of the warrant. In light of the facts presented at the suppression hearing, Defendant made a prima facie case that the search warrant was issued by Judge Beal in his capacity as a Henderson County general sessions judge, acting without lawful authority, inasmuch as he was not acting pursuant to an interchange agreement between two judges.
The only evidence the government presented to rebut Defendant’s claim was the fact that next to his signature on the warrant, Judge Beal wrote: “Judges outside of jurisdiction by interchange.” The fact that Judge Beal represented that he was authorized to issue the search warrant by Tennessee law regarding interchange does not negate the weight of contrary evidence indicating that no interchange agreement existed under the circumstances of this case. Due to the government’s failure to rebut Defendant’s prima facie case, the district court’s finding that Judge Beal was sitting by interchange when he signed the search warrant was clearly erroneous.
II.
The government argues that suppression is not warranted in the instant case because state law is irrelevant to the Fourth Amendment analysis. The Supreme Court recently discussed the role of state law in determining the constitutionality of searches and seizures in Virginia v. Moore, — U.S.-, 128 S.Ct. 1598, 1606, 170 L.Ed.2d 559 (2008). In Moore the Supreme Court determined that the arrest and search of a woman stopped for driving with a suspended license did not violate the Constitution despite the state law providing that, under the particular circumstances, the officers should have issued a summons rather than make an arrest. The Court reasoned that constitutionalizing state law standards for the legality of arrests would make the protections of the Fourth Amendment vary from state to state. Id. at 1607. However, Moore cannot be read to counsel willful blindness to all aspects of state law when courts are faced with Fourth Amendment challenges. Moore stands for the more limited principle that the Fourth Amendment is not violated when officials fail to comply with state law limitations on search and seizure that are more restrictive than constitutional standards. Moore, 128 S.Ct. at 1606 (“A State is free to prefer one search-and-seizure policy among the range of constitutionally permissible options, but its choice of a more restrictive option does not render the less restrictive ones unreasonable, and hence unconstitutional.”). The cases relied upon by the majority come to the same conclusion. United States v. Wright, 16 F.3d 1429, 1437 (6th Cir.1994) (“The fact that the arrest, search, or seizure may have violated state law is irrelevant as long *278 as the standards developed under the Federal Constitution were not offended.”); United States v. Allen, 954 F.2d 1160, 1168 (6th Cir.1992) (“The state may reserve certain rights including a stricter standard of search and seizure law; however, such a standard does not have to be applied in federal court”).
The instant case is readily distinguishable from Moore in that instead of adding to the Fourth Amendment’s requirements, reference to state law is needed to give content to the Fourth Amendment’s guarantees. The Fourth Amendment requires that a warrant for a search or arrest be issued by a neutral and detached magistrate. Shadwick v. City of Tampa, 407 U.S. 345, 92 S.Ct. 2119, 32 L.Ed.2d 783 (1972). As the Supreme Court has recognized, “[historically, a magistrate has been defined broadly as ‘a public civil officer, possessing such power-legislative, executive, or judicial-as the government appointing him may ordain’ or, in a narrower sense ‘an inferior judicial officer, such as a justice of the peace.’ ” Id. at 349, 92 S.Ct. 2119 (quoting Compton v. Alabama, 214 U.S. 1, 7, 29 S.Ct. 605, 53 L.Ed. 885 (1909)). The government need not delegate this power only to lawyers or judges as long as designated magistrates are neutral and detached from law enforcement and have the ability to determine whether probable cause exists for the issuance of the warrant. Id. at 350, 92 S.Ct. 2119. The Shadivick court made clear that the designation of magistrates is largely left to the states. Id. at 354, 92 S.Ct. 2119 (“States are entitled to some flexibility and leeway in their designation of magistrates ... ”). Because state law determines who qualifies as a magistrate, an examination of whether a warrant was issued in compliance with the Fourth Amendment necessitates an examination of state law. This situation is unlike that prohibited by Moore, which examined whether officers complied with the state’s restrictions on arrest, but is instead comparable to looking to the state law definition of a crime in order to determine whether probable cause existed. See, e.g., Maryland v. Pringle, 540 U.S. 366, 369-70, 124 S.Ct. 795, 157 L.Ed.2d 769 (2003).
In United States v. Scott, 260 F.3d 512 (6th Cir.2001), this Court considered whether the Fourth Amendment is violated when a warrant is issued by a person acting without lawful authority. In Scott a retired general sessions judge signed a search warrant. Despite the fact that the issuing judge sometimes substituted for active judges, we found that he was not doing so at the time the warrant was signed and thus lacked legal authority to sign a warrant. Scott, 260 F.3d at 515. We reasoned that this lack of authority went to the heart of the Fourth Amendment requirement “that the warrant be issued by a neutral and detached judicial officer.” Id. As a result, we concluded that the evidence procured as a result of the search should have been suppressed and that the good faith exception to the exclusionary rule established in United States v. Leon, 468 U.S. 897, 104 S.Ct. 3430, 82 L.Ed.2d 677 (1984), did not apply because the warrant was void ab initio. Scott, 260 F.3d at 515.
The government attempts to distinguish Scott from the case at hand by arguing that the holding in Scott dealt with an individual who lacked legal authority to issue any warrants. (Gov’t Br. at 8.) This contention is a mischaracterization of the case. In Scott, the judge who issued the warrant would sometimes act as a special judge replacing active judges when they were unavailable. Scott, 260 F.3d at 515. When properly acting in that capacity, the issuing judge had the authority to issue a warrant, State v. Smith, 867 S.W.2d 343, 349 (Tenn.Crim.App.1993); however, at *279 the time the warrant in Scott was issued he was not acting in the legal capacity necessary to be authorized to issue warrants. Scott, 260 F.3d at 515. The situation in Scott is quite similar to a case in which a judge is acting outside his jurisdiction; such a judge has authority to issue search warrants in some locations but warrants issued for locations in which he has no authority are invalid from their inception. See United States v. Durham, 148 Fed.Appx. 320, 323-25 (6th Cir.2005) (unpublished) (examining the authority of a Kentucky trial commissioner to act outside of his county of appointment in issuing a search warrant, and concluding that the search warrant was valid because the trial commissioner had valid temporary appointment to the county in which the search warrant was executed); United States v. Bennett, 170 F.3d 632, 635-36 (6th Cir.1999) (determining that a search warrant issued by a court clerk was valid where state law prerequisites for the clerk to have authority to issue search warrants were fulfilled). See generally United States v. Strother, 578 F.2d 397, 399 (D.C.Cir.1978) (citing “[t]he general principle that a judicial officer’s writ cannot run outside her territorial jurisdiction”). Adopting the government’s point of view would lead to the absurd i’esult that being a judicial officer somewhere would allow one to issue a search warrant everywhere. The powers of local judicial officers have territorial limits, and this Court must look to state law to determine the extent of an officer’s judicial power. See also United States v. Neering, 194 F.Supp.2d 620 (E.D.Mich.2002) (holding that a deputy magistrate who was not lawfully appointed lacked authority to issue warrants and that the search warrant was void as a matter of law); Bosteder v. City of Renton, 155 Wash.2d 18, 117 P.3d 316, 324 (2005) (citing Scott in holding that an administrative search warrant was void when it was issued by a state court judge with authority to issue criminal search warrants but not administrative search warrants). Thus, Sixth Circuit precedent requires the suppression of evidence gathered pursuant to a warrant issued by an official acting outside of his jurisdiction.
CONCLUSION
Because the judge issuing the search warrant for Defendant’s residence acted without legal authority, the district court’s order denying Defendant’s motion to suppress the evidence gathered as a result of the search of his residence should be reversed.